PEOPLE v WADE

Docket No. 78-2429. Submitted October 19, 1979, at Detroit.—Decided
November 19, 1979. Leave to appeal applied for.

Defendant, Ida Wade, was convicted of assault with intent to do
great bodily harm less than murder and carrying a firearm
during the commission of a felony in the Recorder's Court of
Detroit, David E. Wilson, J. At trial, defendant testified that
she had no intent to shoot the victim but that she hid in her
basement and did not come up until the police arrived a second
time. The prosecutor cross-examined, asking her why she had
not come forward to explain that the shooting was accidental.
Subsequently, the prosecutor suggested to the court that his
cross-examination may have violated defendant's right against
self-incrimination. The court had the offending question and
answer read to the jury and instructed the jury to disregard
them. Defendant appeals. *Held:*

A defendant's right to remain silent is constant, extending
prior to, at the time of and following his arrest. The prosecu-
tor's question was improper. However, the court's instruction to
disregard it alleviated any possible prejudice to defendant.

Affirmed.

DANHOF, C.J., concurred in result only.

1. CRIMINAL LAW — PROSECUTORIAL COMMENT — RIGHT TO SILENCE.

A prosecutor may not suggest a negative inference from a defen-
dant's pre-arrest failure to either turn himself over or to
explain his defenses to police; a defendant's right to remain
silent is constant, extending prior to, at the time of and
following his arrest.

2. CRIMINAL LAW — PROSECUTORIAL COMMENT — RIGHT TO SILENCE.

A trial court, after an impermissible prosecutorial question on a
defendant's pre-arrest silence, properly alleviated any possible
prejudice to the defendant by having the prohibited question

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 221.
[2] 75 Am Jur 2d, Trial § 317.

and answer read back to the jury and directing the jury to disregard them.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy Scallen,* Assistant Prosecuting Attorney, for the people.

*Neil H. Fink,* for defendant on appeal.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

D. C. RILEY, J. On June 9, 1978, a jury found the defendant guilty of both assault with intent to do great bodily harm less than murder, contrary to MCL 750.84; MSA 28.279, and carrying a firearm in the commission of a felony, contrary to MCL 750.227b; MSA 28.424(2). She was sentenced to terms of two years in prison for the felony-firearm charge and 90 days in jail for the assault charge, as well as being given a $500 fine for the latter offense. Defendant now appeals as of right.

Defendant first attacks the constitutionality of the felony-firearm statute. This issue has been resolved by the Supreme Court in *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), and needs no further discussion here.

Defendant also challenges the propriety of the prosecutor's questioning regarding her silence prior to arrest. Defendant testified that she had no intent to shoot the complainant. Yet, following the assault, she hid in the basement of her home and did not come up until the police arrived on the scene for the second time. On cross-examination, the prosecuting attorney questioned the defendant concerning her hiding, pressing her as to why she

had not come forward to explain that the shooting was accidental.[1] Although defense counsel made no objection, the prosecutor subsequently suggested to the court that his cross-examination may have violated defendant's rights.[2] Upon defense counsel's recommendation, the trial judge had the court reporter read back the disputed cross-examination to the jury and then instructed them to totally disregard both the questions and the answers to that examination. Defendant now contends that this was insufficient to rectify the error.

Michigan has a long-standing tradition of protecting defendants' rights to remain silent and to be free from self-incrimination, covering both incrimination by word or by conduct. Over 25 years prior to *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), the Supreme Court of Michigan stated:

"The time has not yet come when an accused must cock his ear to hear every damaging allegation against him and, if not denied by him, have the statement and his silence accepted as evidence of guilt. There can be no such thing as confession of guilt by silence in or out of court. The unanswered allegation by another of the guilt of a defendant is no confession of guilt on the part of a defendant. Defendant, if he heard the statement, was not morally or legally called upon to make denial or suffer his failure to do so to stand as evidence of his

---

[1] The exact exchange was as follows:

"Q. *[Prosecuting Attorney]* Now, you testified you didn't intend to murder Mr. Tate, right?

"A. *[Defendant]* Right.

"Q. You testified that you really didn't even—really intend to harm Mr. Tate?

"A. Yes.

"Q. And you are in the basement when the police are there?

"A. Yes.

"Q. You didn't come out of the basement at that point in time and tell the police, 'Hey, it was an accident; I am sorry,' did you?

"A. I didn't know he was shot."

[2] US Const, Am V; Const 1963, art 1, § 17.

guilt. He said nothing, and what was said in his presence by another was inadmissible, just as the court later held." *People v Bigge,* 288 Mich 417, 420; 285 NW 5 (1939).

In the wake of *Miranda, supra,* defendants' rights to remain silent and to remain free from self-incrimination have been expanded and strengthened. A prosecutor may not refer to a defendant's silence during police interrogation, *United States v Hale,* 422 US 171; 95 S Ct 2133; 45 L Ed 2d 99 (1975), or in response to accusation. *People v Jablonski,* 38 Mich App 33; 195 NW2d 777 (1972). Further, a prosecutor may not suggest an inculpatory inference from a defendant's failure to take the stand, *Fontaine v California,* 390 US 593; 88 S Ct 1229; 20 L Ed 2d 154 (1968), *People v Mancill,* 393 Mich 132; 223 NW2d 289 (1974), or to explain defenses upon arrest. *People v Frazier,* 79 Mich App 234; 261 NW2d 271 (1977). If such commentary were permissible, the entire concept of being presumed innocent until proven guilty would be severly undermined. *Frazier, supra.*

Michigan courts recognized early that if a defendant's incriminating statements made at the time of arrest are inadmissible (in the absence of *Miranda* warnings), his silence should be protected as well.[3] In *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), a prosecutor examined the defendant at trial as to why he had not reported possibly exculpatory evidence to police at the time of his arrest.[4]

---

[3] The United States Supreme Court subsequently recognized this right in *Doyle v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976).

[4] Bobo had stated on direct examination that, just prior to his arrest, two men ran past him from the scene of the crime. On cross-examination, the following exchange took place:

"Q. *[Prosecuting attorney]:* What did you see with reference to anybody running down the street toward you?

The Supreme Court held that such examination is an impermissible infringement upon a defendant's right to remain silent at the time of arrest. The instant defendant urges this panel to extend *Bobo* to her situation, so that comment on *pre-arrest* silence would be proscribed as well.

In *People v Dailey,* 36 Mich App 312; 193 NW2d 344 (1971), a case similar to the instant one, the prosecutor questioned the defendant regarding his pre-arrest failure to inform police as to why he was hiding in the bushes. In closing arguments, the prosecutor implied that defendant's guilt could

---

"A. *[Defendant Bobo]:* I didn't see nothing but two men running past me.

\* \* \*

"Q. Did you say anything to him [the questioning police officer] about two other men running on the street?
"A. He didn't ask me.
"Q. I said did you say anything to him?
"A. No, I didn't.
*"Defense Counsel:* Before you answer that question, I do object to it.

\* \* \*

"A. My last question to you was did you tell the officer about these two men running down the alley; your is *[sic]* answer is no?
"A. I don't recall.

\* \* \*

*"Prosecutor:* Oh yes, one of the defendants, yesterday said something about two other men. Two other men, as they were walking, mind you, from the other direction, from what had been previously testified to by three of the officers, they claim now were coming from the other direction and two phantoms, two men who they claim ran past them five or six feet past them ran down the alley. Yet within five or six feet Edison and Ned Bobo who claimed they saw these two men said nothing to the police.
*"Defense counsel:* \* \* \* If the Court please, at this point I move for a mistrial on behalf of Ned Ladd Bobo on the ground that the Prosecutor has violated that defendant's privilege against incrimination. The defendant Ned Ladd Bobo at the time of his interrogation by Detective Berryman with the gun pointed at him being questioned about a robbery had no duty whatsoever to speak to the detective about anything. And his failure to speak to that cannot be held against him. And I submit that I am intitled *[sic]* to a mistrial.
*"The Court:* I will deny the motion. \* \* \*." 390 Mich 355, 357, 358, fn 2, 3, 4.

be inferred from his concealment. The Court of Appeals reversed, stating that the prosecution improperly commented on defendant's exercise of his constitutional right to remain silent.

We hold that a prosecutor may not suggest a negative inference from a defendant's pre-arrest failure to either turn himself over or to explain defenses to police.[5] A defendant's constitutional right to remain silent is constant; there is no distinction between silence prior to, at the time of, or following arrest. See, *Bobo, supra,* 360, *Frazier, supra,* 237. Thus, the prosecutor's comment on the instant defendant's pre-arrest silence was impermissible. Reversal would be mandated here, were it not for the trial judge's cognizance of the error and his curative instructions. We find that the trial court's following of defense counsel's suggestion of having the prohibited portion read back to the jury and directing the jury to disregard both the questioning and the answers, alleviated any possible prejudice to the defendant.[6] See *People v*

[5] This will not be true in cases where the defendant performs a *positive* act indicating guilt such as fleeing from pursuing officers. See *People v Dixon,* 84 Mich App 675, 682; 270 NW2d 488 (1978). Our holding here is limited to the inability of the people to comment on a defendant's nonacts or nonutterances.

[6] The exact handling of the matter by the court was as follows:

"However, something has been called to the Court's attention of a question asked during the testimony, and we are going to ask that the Court Reporter read the question to you, members of the jury, and the answer which was given.

"It concerns the Prosecutor's examination of the defendant relative to the time frame in which she went to the basement.

"You have that, Mr. Court Reporter?

"(Whereupon the Court Reporter read back a previous question and answer.)

"THE COURT: Now, members of the jury panel, the last portion of that question asking the witness whether or not she had made a statement to the police should be totally disregarded by you. We are striking the question from the record and the answer that was given for the reason under the law that a defendant who was being charged is under no duty, no responsibility to explain what she did or may not have done unless she gives a voluntary statement. So that particular

*Clemons,* 91 Mich App 68, 72; 282 NW2d 838 (1979), *People v Gray,* 57 Mich App 289, 295; 225 NW2d 733 (1975).

Affirmed.

Chief Judge DANHOF concurs in result only.

question and the answer you are to disregard completely because as the Court advises you she had no duty to answer one way or the other, and the answer that she may have given may influence you in some way. Disregard it completely.

"Any questions?

"* * * *[Prosecuting attorney]* No, your Honor.

"* * * *[Defense attorney]* None, your Honor."