PEOPLE v COLLIER

Docket No. 75603. Argued January 16, 1986 (Calendar No. 19).
    Decided September 16, 1986.
    Eric Collier was convicted in the Recorder's Court of Detroit,
    John H. Gillis, Jr., J., of assault with intent to commit great
    bodily harm less than murder. The Court of Appeals, D. E.
    HOLBROOK, JR., P.J., and MACKENZIE and QUINNELL, JJ., re-
    versed in an unpublished opinion per curiam on the ground
    that attempted impeachment of the defendant by the prose-
    cutor during cross-examination and argument by reference to
    the defendant's failure prior to arrest to inform the police that
    he had been a victim of a robbery was improper (Docket No.
    71813). The people appeal.
        In an opinion by Justice BRICKLEY, joined by Chief Justice
    WILLIAMS and Justices BOYLE and RILEY, the Supreme Court
    held:
        The impeachment of the defendant's testimony that he had
    been a victim of an armed robbery by reference to his failure
    prior to arrest to report the fact to the police was properly
    permitted as probative of his credibility and did not violate the
    Due Process or Self-incrimination Clauses of the Michigan
    Constitution.
        1. Where an accused exercises his constitutional right to
    remain silent at the time of arrest, use of such silence during
    trial to impeach prior inconsistent statements, where no refer-
    ence is made to the statements during direct examination, is
    improper. In this case, however, the silence alluded to by the
    prosecutor occurred before the defendant had any contact with
    the police. No mention was made of silence on the part of the
    defendant at or after contact with the police. Thus, reversal of
    the defendant's conviction on that basis was improper. In
    addition, it would have been entirely natural and expected that

REFERENCES

Am Jur 2d, Criminal Law, §§ 701 et seq., 825, 942.
Impeachment of defendant in criminal case by showing defendant's
    prearrest silence—state cases. 35 ALR4th 731.
Impeachment of defense witness in criminal case by showing wit-
    ness' prior silence or failure or refusal to testify. 20 ALR4th 245.

a person robbed under the circumstances related by the defendant would have reported the crime to the police. The prosecutor did not ask the jury to infer guilt from the defendant's silence, but urged that his testimony was unbelievable in light of his subsequent conduct. Thus, the permitting of the questioning and argument regarding the defendant's prearrest silence was proper.

2. The defendant's arguments that the questioning and argument violated his right of due process and right against self-incrimination were without merit.

Justice BOYLE, concurring, wrote separately to note that the Fifth Amendment and Const 1963, art 1, § 17 guarantee a right to be free of governmentally compelled self-incrimination, and in this case no governmental action induced the defendant's silence before arrest. The constitutional right has no bearing on the probative significance of silence prior to contact with the police, and thus there was no basis to preclude use of the defendant's prearrest silence for purposes of impeachment.

Reversed and remanded.

Justice CAVANAGH, joined by Justices LEVIN and ARCHER, dissenting, stated that although the federal constitution does not prohibit use of prearrest silence in impeaching a defendant, the Supreme Court may develop evidentiary rules which prohibit such use. The Court also is free to interpret the state constitution in a manner which affords greater rights where there is a compelling reason to do so. In this case there are compelling reasons to hold as a matter of state constitutional law that a defendant's prearrest silence may not be used for purposes of impeachment.

Under the circumstances, it was not entirely natural and expected that the defendant as a victim of a robbery would have reported the crime to the police. The use of the defendant's silence, even for purposes of impeachment, impinges upon the defendant's constitutional rights while providing little probative benefit.

Justice ARCHER, joined by Justice LEVIN, dissenting, stated that evidence of a defendant's prearrest silence should not be admissible for purposes of impeachment. However, if such evidence is introduced into the record, the trial court must weigh the probative value of admitting the evidence against any prejudicial effect, case by case. Prejudicial effect outweighs the probative value of admitting such evidence whenever the trial court determines that it would not have been natural for the defendant to come forward during the time period in which the prosecutor says the silence impairs the credibility of the trial testimony.

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PREARREST SI-
   LENCE.

   The impeachment of a defendant's testimony that he had been a
   victim of an armed robbery by reference to his failure to report
   the fact to the police was properly permitted in a prosecution
   for assault with intent to commit murder as probative of his
   credibility.

CONCURRING OPINION BY BOYLE, J.

2. CRIMINAL LAW — CONSTITUTIONAL LAW — PREARREST SILENCE —
   IMPEACHMENT.

   *A person has a right to be free of governmentally compelled self-
   incrimination, but the right has no bearing on the probative
   significance of silence prior to contact with the police, and thus
   there is no basis to preclude use of a defendant's prearrest
   silence for purposes of impeachment (US Const, Am V; Const
   1963, art 1, § 17).*

DISSENTING OPINION BY CAVANAGH, J.

3. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PREARREST SI-
   LENCE.

   *A defendant's prearrest silence should not be used for purposes of
   impeachment (Const 1963, art 1, § 17).*

DISSENTING OPINION BY ARCHER, J.

4. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PREARREST SI-
   LENCE.

   *Where evidence of a defendant's prearrest silence is introduced
   into the record, the trial court must weigh the probative value
   of admitting the evidence against any prejudicial effect, case by
   case; prejudicial effect outweighs the probative value of admit-
   ting such evidence whenever the court determines that it would
   not have been natural for the defendant to come forward
   during the time period in which the prosecutor says the silence
   impairs the credibility of the trial testimony.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, and *Timothy A. Baughman,* Dep-
uty Chief, Civil and Appeals, for the people.

*Matthew Posner* for the defendant.

BRICKLEY, J. The issue in this case is whether the Court of Appeals properly reversed defendant's conviction on the basis of improper prosecutorial cross-examination and argument concerning defendant's prearrest failure to inform the police of his version of the facts that he had been robbed.

### FACTS AND PROCEEDINGS

Defendant was charged with assault with intent to commit murder, MCL 750.83; MSA 28.278, for stabbing Wade Dean on November 2, 1981. After a three-day jury trial, defendant was convicted of the lesser offense of assault with intent to commit great bodily harm less than murder on September 23, 1982. MCL 750.84; MSA 28.279. He was subsequently sentenced from six years eight months to ten years in prison.

There was conflicting testimony as to the events precipitating the stabbing. The only thing not in dispute is that there was an argument over some dogs. Victor Kemp testified that he had been taking care of two pit bull puppies owned by defendant for approximately one month prior to the stabbing. Kemp further testified that the day before the incident one of the puppies was stolen. When defendant discovered this, he went to Kemp's house and demanded payment for his loss. When Kemp refused to pay, he testified that defendant demanded that he be compensated by being given Kemp's own Doberman pinscher puppy. Dean, the stabbing victim, who was visiting Kemp, heard the two arguing in the driveway area of Kemp's residence and came outside to see what was happening. Both Dean and Kemp testified that after Dean came outside defendant began to make disparaging remarks about Dean. When Dean turned to walk away from the verbal altercation,

he claimed that defendant set upon him and
stabbed him four times, once in the stomach and
three times in the back, with a short-bladed knife
which defendant had taken from his pocket. Kemp
testified that defendant then turned and threat-
ened him with the knife, but that Kemp managed
to elude him by running into the street. Both
Kemp and Dean denied having weapons of any
sort on their persons at any time during the
altercation.

Defendant's version of the events was drastically
different. He claimed that he had never given
either of his pit bull puppies to Kemp. Rather, he
claimed that he was walking one of his puppies
down the street at approximately noon when
Kemp asked to speak with him in the driveway
area of Kemp's home. When defendant walked up
to him, he claimed that Kemp pulled a gun and
Dean appeared with a knife. Kemp demanded at
gunpoint that defendant turn over the dog to him,
and defendant complied. When Kemp took the dog
inside, Dean continued to threaten defendant with
the knife. Defendant testified that he then grap-
pled with Dean and the knife fell to the ground,
after which he picked it up. When Dean then
picked up a two by four and swung it at him,
defendant testified that he stabbed Dean with his
own knife in self-defense and left.

On cross-examination of defendant, the prose-
cutor asked him if he had reported the incident to
the police after he left the scene:

*Q.* Where did you go?
*A.* Where did who go?
*Q.* You. You went to the police station right
away to report it?
*A.* The next day.
*Q.* Yeah.

*A.* I reported it. The reason I didn't go to the police station is because I didn't have no proper ownership showing that the dog was my dog. I didn't have no papers or nothing on the dog.

*Q.* Weren't you a little worried because the man was laying [sic] stabbed and maybe dead? Didn't you think to report that to the police?

*A.* No, because he got up and run.

*Q.* You were more worried about kennel papers than the man laying on the sidewalk, is that right?

*A.* No, that's not right.

The prosecutor returned to this issue later in cross-examination of the defendant:

*Q.* So then why didn't you stay there and wait for the police? You ran home, you didn't call the police right away.

*A.* No, I didn't.

*Q.* Tell me again why you didn't do that now.

*A.* Because I had nothing showing proper ownership that that dog was mine. That's why I didn't call the police.

*Q.* Well, what about the assault and the robbery?

*A.* What about it?

*Q.* Didn't somebody point a gun at you?

*A.* Yes, they did.

*Q.* You didn't think that would be a crime to report?

*A.* No, I knew that I had stabbed him and I knew that I would be hearing from the police soon anyway.

During the prosecutor's closing argument further reference was made to defendant's failure to contact the police:

If that version makes sense, especially when his first friend is standing there with a gun and you

know there's a gun there, is that what you're
gonna do? Of course if you're really a good guy
and you're just being robbed of your dog and they
get the dog and start turning away, the best thing
for you to do is just run and high tail it out of
there and go call the police.

\* \* \*

Now, and then looking at a gun, knowing you're
gonna get shot while your doing that, the logical
thing to do is run and call the police. Did he do
that? No, he didn't call the police. Why? Because I
didn't have any kennel papers to prove that I was
the owner of the dog. Now, is that a logical thing
to do? Does that make sense? You don't tell the
police that someone points a gun at you? That's a
crime in itself? Doesn't make sense.

Defendant lodged no objection to this argument
or questioning.

After being convicted, defendant appealed as of
right to the Court of Appeals raising five issues,
the first of which asserted that the prosecutor
violated the rule of *People v Bobo,* 390 Mich 355;
212 NW2d 190 (1973), by referring in both his
questioning and closing argument to defendant's
failure to contact the police after the incident
occurred. In an unpublished per curiam opinion
released December 6, 1984, the Court of Appeals
agreed with defendant on the *Bobo* issue and
reversed his conviction:

In the instant case, the prosecutor deliberately
brought up defendant's pre-arrest silence, ques-
tioned him about it, and then utilized it in his
closing argument. This is impermissible. . . .

Accordingly, the prosecutor's repeated use of
defendant's pre-arrest statements requires reversal
and a remand for a new trial.

The Court further noted that our decision in

*Bobo* had construed the result in that case under Const 1963, art 1, § 17, and that "we believe that even in light of United States Supreme Court precedent, the Michigan Supreme Court would continue to adhere to *Bobo* as a matter of state constitutional law."

We granted the prosecutor's application for leave to appeal on June 26, 1985. 422 Mich 937.

I

In *Bobo,* we were presented the following question:

> "Where an accused exercises his constitutional right to remain silent *at the time of arrest,* does the use of such silence against him at trial under the doctrine of impeachment by prior inconsistent statement constitute prejudicial error where he made no allegations on direct examination as to what was said or not said *at the time of arrest?"* [390 Mich 357. Emphasis added.]

In *Bobo,* the defendant exercised his right to remain silent "[w]hen arrested by Detroit police officers . . . ." *Id.* At trial, defendant Bobo testified that just prior to being arrested near the scene of the crime two men, presumably potential suspects, ran past him from the general area of the crime. On cross-examination, the prosecutor, over timely objection from defense counsel, was permitted to ask the defendant if he had informed the police during interrogation about the two men. The prosecutor was also allowed to remark in closing argument that the defendant had said nothing to the police about the two men running past him despite objection by defense counsel.

We held that the questioning and argument were improper because they restricted "the exer-

cise of the constitutional right to remain silent *in the face of accusation."* 390 Mich 359 (emphasis added). We went on to state that it made "little difference" whether the defendant's silence was prior to or at the time of arrest because "the defendant's Fifth Amendment right to remain silent is constant." 390 Mich 360.

We believe that the instant case is not controlled by *Bobo* because here the "silence" alluded to by the prosecutor occurred before any contact with the police. In *Bobo,* the defendant was detained by the police and may have been under arrest. Our statement that the right to remain silent is constant does not compel the conclusion that the questioning and argument on defendant's silence in this case were improper. That statement must be interpreted in light of the facts and in the context of *Bobo.* In *Bobo,* there was uncertainty as to whether defendant was in fact under arrest. 390 Mich 364-365. (Dissenting opinion of BRENNAN, J.) When the majority asserted that it did not matter whether defendant was under arrest or not, it was merely saying that given the confrontation by the police, it was irrelevant to the analysis whether the arrest had been technically effectuated. Thus, the *Bobo* holding only applied to those situations where the state seeks to impeach a defendant with his silence maintained during contact with police officers.[1] Here, the prosecutor impeached defendant regarding his failure to report a robbery to the police. There was no questioning or mention of defendant's silence at or after his contact with the police. The questioning and closing argument in this case do not violate the rule of *Bobo,* and the

[1] The parties have argued whether *Bobo* relied on the state or federal constitution. We do not decide this question due to our conclusion that the holding of *Bobo* is inapplicable to the present situation.

Court of Appeals therefore improperly reversed defendant's conviction on that basis.[2]

Defendant also asserts that under the Rules of Evidence the questioning and comment at issue were improper. *Commonwealth v Nickerson,* 386 Mass 54; 434 NE2d 992; 35 ALR4th 722 (1982); *People v Conyers,* 52 NY2d 454; 438 NYS2d 741; 420 NE2d 933 (1981).

In *Nickerson,* the Massachusetts Supreme Court held that the decision whether to admit evidence of prearrest silence is evidentiary, left to the discretion of the trial court. The defendant in *Nickerson* was charged with assault in connection with a stabbing that occurred in a gang fight. Defense witnesses testified that another member of the defendant's gang, Whipple, had done the stabbing. The defendant also testified that Whipple did the stabbing. On cross-examination, the defendant admitted that he had assisted a felon in escaping after a crime by driving Whipple home. Also, the prosecutor asked him if he had come forward in the two-day period between the crime and arrest to tell the police that it was Whipple and not he who had done the stabbing. In the closing statement to the jury, the prosecutor argued that the defendant was not to be believed because he did not come forward to report the crime. 386 Mass 55.

The trial judge instructed the jury in part as follows:

---

[2] Defendant concedes that the questioning and argument here do not violate the federal constitution. *Jenkins v Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980). See also, *Doyle v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976), *Fletcher v Weir,* 455 US 603; 102 S Ct 1309; 71 L Ed 2d 490 (1982), and *Wainright v Greenfield,* 474 US —; 106 S Ct 634; 88 L Ed 2d 623 (1986).

We express no opinion on whether the Michigan Constitution should be interpreted as giving defendants greater protection than the federal one as interpreted in *Doyle* and *Fletcher.* Rather, the holding of this case is limited to only those situations where the "silence" that is questioned occurs before any contact with the police.

So, with a super-abundance of caution, I want to make sure that we do not infringe upon the constitutional right of each of these defendants to remain silent after arrest because after arrest a person is under no obligation to speak to the police. He had a constitutional right to remain silent, and evidence of his failure to tell the police anything he knew or saw or heard is not to be considered on this issue of guilt.

However, if you find beyond a reasonable doubt that the defendants on that night failed to report to the police or any authority what Whipple had said or what they had observed Whipple do, you may consider that to determine the reliability of all of the evidence offered by that defendant during the course of his evidence. You may just consider that, in light of all of the other circumstances, in determining the reliability of the testimony involved. [386 Mass 56, n 2.]

The defendant claimed that the impeachment and instruction were improper under state common-law rules. The court held that while it did not decide that impeachment with prearrest silence was always inappropriate, such impeachment was error in the circumstances of that case. 386 Mass 57.

The prosecutor wanted the jury to infer that the defendant was not telling the truth on the stand because he did not immediately come forward and identify Whipple as the person who cut the victim. The defendant, however, had no duty to report the crime or to offer exculpatory information to the authorities. Nevertheless, the judge instructed the jury that his veracity could be doubted if he did not come forward with the incriminating evidence that he was at the crime scene, that he saw the attack, and that he knew the attacker was Whipple.

The *Nickerson* court held that the jury should

not have been permitted to consider the defendant's failure to come forward. It would not have been "natural" for the defendant to produce evidence against himself. 386 Mass 60. His failure to come forward "says little about the truth of his trial testimony." 386 Mass 60-61. Allowing impeachment with prearrest silence suggests that a defendant has a duty to incriminate himself and burdens his right to testify on his own behalf. The court further noted that although most people do not know the intricacies of their constitutional rights, "it is a generally held notion that one does not have to say anything to the police and that what one does say may be used against him." 386 Mass 61.

The *Nickerson* court said that the outcome "may be different where a defendant failed to come forward prior to his arrest to report a fact or facts not tending to incriminate him." However, the court further noted that impeachment with prearrest silence "should be approached with caution, and, wherever it is undertaken, it should be prefaced by a proper demonstration that it was 'natural' to expect the defendant to speak in the circumstances." 386 Mass 61-62. The court also said that a trial judge may conduct a voir dire on this question, and if the evidence is admitted it should be for impeachment purposes only. *Id.*

While we agree with the approach of *Nickerson,* we do not believe it assists the defendant here. At the trial in this case, defendant testified that he was in fact the victim of an armed robbery rather than a perpetrator of an assault. He now contends that it would not be natural for the victim of an armed robbery to report the crime to the police. We find this position untenable. Instead, we believe it is entirely natural and expected that one who has been robbed under the circumstances

related by the defendant would report the crime to the police. Defendant knew the identity of the robber and the location of the robbery. It would have been natural for him to report the crime to the police, to have the assailant arrested, and to retrieve his property. The questioning and impeachment in this case were designed to cast doubt on the credibility of defendant's testimony. The prosecutor simply argued that if defendant's version were true he would have reported the crime. The prosecutor did not ask the jury to make an inference of guilt[3] because defendant did not con-

[3] Cf. *State v Sabbah,* 13 Ohio App 3d 124; 468 NE2d 718 (1982). In *Sabbah,* the defendant was charged with murder. The defendant, victim, and others were watching a Super Bowl game at a friend's house in Fremont, Ohio. The defendant and the victim had had an earlier altercation in which the defendant claimed the victim stole $40 from him. The prosecution's theory was that when the victim left to go to a carry-out store, the defendant waited outside the house to ambush him when he returned.

The defendant testified that he shot the victim in self-defense. He said the victim had brandished a gun earlier in the dispute over the $40 and that he also publicly made threats on the defendant's life. The defendant maintained that he was leaving the house to go home when the victim returned and accosted him with a handgun. He shot the victim in self-defense, believing that the victim was about to kill him. He further testified that after the shooting he intended to drive to Sandusky to tell his mother what happened and that he was then going to call the police.

He was arrested about an hour after the shooting while en route to Sandusky.

On cross-examination, the prosecutor questioned him extensively about not turning himself in:

*Q.* [After the shooting] you did not go to the police station, did you?

*A.* No, I was trying to get out of Fremont, period. I didn't want any more . . . .

*Q.* And you didn't—You were trying to get out of Fremont, right?

*A.* —trouble. I didn't want any more trouble.

*Q.* And you didn't stick around and wait for the police to come so that you could explain this to them, did you?

*A.* No. I could have got shot if I had stuck around.

*Q.* And until this very day you have never told the police that you did this in self-defense, did you?

*A.* I didn't explain it with nobody.

tact the police, but instead urged that defendant's testimony was unbelievable in light of his subsequent conduct. Accordingly, we find that no error occurred.

We also note that MRE 403 is applicable to this situation and that this type of evidence should not be admitted if its probative value is substantially outweighed by its prejudicial effect.[4]

## II

The defendant, recognizing that reliance on the Fifth Amendment has been undercut by *Jenkins v*

\*    \*    \*

*Q.* You have never, until you got on this stand here today, told anybody, with the possible exception of Jack Levin, that this shooting occurred as a result of self-defense, have you?

\*    \*    \*

*A.* I wasn't going to explain it to nobody. [13 Ohio App 3d 126-127.]

The prosecutor also questioned the defendant regarding his failure to speak to police after his arrest and in closing argument he commented:

What's reasonable? If you have been in the position that this man is in and you know that you are now, and the police are telling you, going to be charged with the crime, what do you do? You say, "My God, man, I was protecting myself. I was defending myself. This guy had a five, six inch gun. It's silver. Go look for it."

\*    \*    \*

Go look for the gun Officers. This man was going to shoot me. Talk to these people. These people have told me in the last five days that he's going to kill me. Here's a list of people. Go talk to these people. They'll tell you that he's been threatening me. He didn't do any of that. He didn't do anything. He didn't do anything because none of that's true. [13 Ohio App 3d 128.]

This questioning and argument were clearly intended to convey to the jurors that they should infer guilt from defendant's prearrest silence. This inference is impermissible. See also *Jones v State,* 265 Ind 447; 355 NE2d 402 (1976).

[4] See *Conyers, supra,* 52 NY2d 458-459.

*Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980), argues that, nevertheless, we should find a violation of the due process and self-incrimination provisions of the Michigan Constitution.[5] He first claims that the use of nonprobative impeachment testimony rises to a due process violation. Since we find under the facts of this case that the impeachment, by way of failure to report a claimed robbery was clearly probative, we conclude that the due process argument is without merit.

As to the violation of the "right to remain silent" the defendant urges us to adopt the minority position in *Jenkins.* In *Jenkins,* the defendant was impeached by being questioned as to why he had not volunteered his self-defense theory in the two weeks between a stabbing altercation and his arrest. The majority held that the prearrest silence impeachment did not amount to a constitutional deprivation under the Fifth Amendment and in doing so also stated in a footnote that they were not deciding the larger question whether the Fifth Amendment was implicated at all in the use of a prearrest silence. The *Jenkins* minority stated:

> The Court's holding that a criminal defendant's testimony may be impeached by his prearrest silence has three patent—and, in my view, fatal—defects. First, the mere fact of prearrest silence is so unlikely to be probative of the falsity of the defendant's trial testimony that its use for impeachment purposes is contrary to the Due Process Clause of the Fourteenth Amendment. Second, the drawing of an adverse inference from the failure to volunteer incriminating statements impermissibly infringes the privilege against self-incrimination. Third, the availability of the inference for

[5] Const 1963, art 1, § 17.

impeachment purposes impermissibly burdens the decision to exercise the constitutional right to testify in one's own defense. [447 US 246.]

For us to find that this case invokes the Michigan Constitution would require us to differ with the *Jenkins* majority's analysis in a prearrest silence impeachment situation involving a factual setting less favorable to the defendant than that in *Jenkins.* Not only is there no federal Fifth Amendment precedent for such a finding, we are also aware of no other state that has taken such a step in the interpretation of its own self-incrimination provision. We have been offered no satisfactory arguments why we should be the first to use our own constitution to so enlarge upon existing Fifth Amendment jurisprudence.[6]

Moreover, we believe the evidentiary rule announced today will adequately protect an accused's right to not have silence be used as incrimination by allowing the jury to infer guilt from it. When a defendant at trial elects to waive his privilege not to testify and takes the stand, attempted impeachment is a time-honored method of advancing the truthfinding function. The interest in truth must occasionally yield to a competing and higher interest, *Doyle v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976), but rules which inhibit the factfinding function are, and must be, the exception and not the rule. "Once a defendant decides to testify, '[t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self incrimina-

---

[6] As to the argument that this impeachment burdens the constitutional right to testify we need only speculate that such a theory would throw in doubt any impeachment of a defendant.

tion.' *Brown v United States,* 356 US 148, 156 [78 S Ct 622; 2 L Ed 2d 589] (1958)." *Jenkins v Anderson, supra,* p 238. Thus, we are not persuaded that there is a compelling reason here to construe the parallel provision of the Michigan Constitution in a manner different than that in which the federal constitution has been construed. *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983).

### CONCLUSION

We conclude that to the extent *Bobo* is viable it is confined to impeachment for and comment on silence at the time of arrest in the face of accusation.

We find that the essence of the impeachment and comment to the jury in this prearrest silence case, to the effect that the defendant did not report what according to his testimony would have been an armed robbery committed against him, constituted probative information to test the credibility of his trial testimony because it would have been the natural thing to do. The trial judge was within his discretion in allowing such impeachment and comment, particularly in the absence of objection.

Finally, we find that the impeachment and subsequent comment to the jury did not violate either the Due Process or Self-Incrimination Clauses of the Michigan Constitution.

Reversed and remanded to the Court of Appeals for consideration of defendant's remaining issues.

WILLIAMS, C.J., and BOYLE and RILEY, JJ., concurred with BRICKLEY, J.

BOYLE, J. (*concurring*). I concur in the result reached by the majority. I write separately first to

observe that the point overlooked by the dissent is that both the Fifth Amendment and Const 1963, art 1, § 17 guarantee a right to be free of governmentally compelled self-incrimination. In this case, there is simply no governmental action which induced defendant's silence before arrest. There is thus no basis "as a matter of state constitutional law," *post,* p 43, to preclude use of a defendant's prearrest silence for impeachment purposes.

As Justice Stevens noted, concurring in *Jenkins v Anderson,* 447 US 231, 243-244; 100 S Ct 2124; 65 L Ed 2d 86 (1980):

> The fact that a citizen has a constitutional right to remain silent when he is questioned has no bearing on the probative significance of his silence before he has any contact with the police. We need not hold that every citizen has a duty to report every infraction of law that he witnesses in order to justify the drawing of a reasonable inference from silence in a situation in which the ordinary citizen would normally speak out. When a citizen is under no official compulsion whatever, either to speak or to remain silent, I see no reason why his voluntary decision to do one or the other should raise any issue under the Fifth Amendment. For in determining whether the privilege is applicable, the question is whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent. A different view ignores the clear words of the Fifth Amendment. . . . Consequently, I would simply hold that the admissibility of petitioner's failure to come forward with the excuse of self-defense shortly after the stabbing raised a routine evidentiary question that turns on the probative significance of that evidence and presented no issue under the Federal Constitution.

CAVANAGH, J. (*dissenting*). I respectfully dissent

because I believe that there are compelling reasons to apply *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973), to cases involving prearrest silence, and because I am not convinced that it would have been "entirely natural" for this defendant to present himself to the police with his version of the facts.

I

The majority states that this case "is not controlled by *Bobo,*" *ante,* p 31, and that *Bobo* is "inapplicable to the present situation," *ante,* p 31, n 1. Nonetheless, the majority uses this case to limit *Bobo* to situations which impinge upon a person's right to silence "at the time of arrest in the face of accusation." *Ante,* p 39.

The majority places limited emphasis on statements made in *Bobo* which indicate that a defendant's right to remain silent is constant and attaches regardless of whether the silence occurred prior to *or* at the time of arrest. For example, the *Bobo* Court stated:

> What concerned the parties and what prompted our grant of leave was the propriety of using the fact of defendant's silence either as evidence of guilt or for the purpose of impeachment.
> Whether his silence was prior to or at the time of arrest makes little difference—the defendant's Fifth Amendment right to remain silent is constant. [390 Mich 360.]

I do not believe that this language would have been used if *Bobo* was only meant to apply to silence maintained after initiation of police contact.

Several Court of Appeals panels have recognized that *Bobo* applies to prearrest silence. *People v*

*Ray,* 119 Mich App 724; 326 NW2d 622 (1982); *People v Hoshowski,* 108 Mich App 321, 323-324; 310 NW2d 228 (1981); *People v Wade,* 93 Mich App 735; 287 NW2d 368 (1979). The panel's opinion in this case was consistent with these decisions, and I continue to agree with them as a matter of state constitutional law.

Although the federal constitution does not prohibit impeaching a defendant with his prearrest silence, this Court is free to develop evidentiary rules prohibiting its use. *Jenkins v Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980).[1] Of course, we are also free to interpret Const 1963, art 1, § 17 in a manner which affords greater rights when there is a compelling reason to do so. See *People v Nash,* 418 Mich 196, 214-215; 341 NW2d 439 (1983); *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975).

I find compelling reasons to apply *Bobo* to prearrest silence. In effect, the majority opinion requires citizens, who may or may not have been involved in questionable conduct, to present themselves to the police with an explanation, or else

[1] The *Hoshowski* Court stated:

We note that the United States Supreme Court in *Jenkins v Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980), recently has held that, in general, a defendant who elects to testify in his own behalf waives any Fifth or Fourteenth Amendment objection to the use of his prearrest silence for the purposes of impeachment. However, the Court expressly recognized that each state is free to form its own evidentiary rules regarding the use of such evidence. *Id.,* 239. Michigan has already done so. The rule formulated in *Bobo, supra,* apparently was based on our Supreme Court's interpretation of both the Michigan and Federal Constitutions. *Id.,* 357, n 1. A state may adopt a standard which affords its citizens greater protection than is required under the Federal Constitution. *Oregon v Hass,* 420 US 714, 719; 95 S Ct 1215; 43 L Ed 2d 570 (1975); *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). [108 Mich App 325, n 3.]

face the possibility of having their failure to do so used against them in later proceedings. This is contrary to *Bobo* and repugnant to the notion that the right to silence remains constant. This is more than a "satisfactory argument," *ante,* p 38; it is a compelling reason to afford greater rights under our own constitution. I would hold that *Bobo* prevents the use of defendant's prearrest silence for impeachment purposes as a matter of state constitutional law. Const 1963, art 1, § 17; *Bobo, supra.*

II

I am thus not convinced that this case can be viewed solely as an evidentiary matter. However, even if the test of *Commonwealth v Nickerson,* 386 Mass 54; 434 NE2d 992 (1982), *were* appropriate, I still disagree with the majority's conclusion that it would have been "entirely natural and expected that one who has been robbed under the circumstances related by the defendant would report the crime to the police." *Ante,* pp 34-35. The majority acknowledges (indeed, it directs the trial judge to consider) several factors set forth in *People v Conyers,* 52 NY2d 454; 438 NYS2d 741; 420 NE2d 933 (1981). These factors include one's awareness that there is no obligation to speak or to report a crime, one's belief that any effort to do so or to exonerate one's self would be futile, and the "lamentable but undeniable fact of modern society" that the distrust that some harbor for authority leads them to shun all contact with the police, even when such avoidance is against their interests. *Conyers, supra,* p 458. In light of these factors, I cannot conclude that it would have been natural for this defendant to initiate contact with the police.

The majority states that "defendant testified that he was in fact the victim of an armed robbery rather than a perpetrator of an assault." (*Ante,* p 34.) However, the defendant admitted stabbing Dean. Defendant also testified that he did not realize that Dean was seriously hurt, since he got up and ran after the stabbing. The blade was no longer than one and one-half inches in length, and defendant heard Dean say "that little knife you got wasn't gonna hurt nobody." Defendant also explained that he did not go directly to the police since he thought that he would be hearing from them anyway. In fact, the police contacted him the next day.

Given these facts, it was not entirely natural[2] or expected for the defendant to contact the police. The lamentable but undeniable facts of modern society show that one may be afraid of retaliation for reporting a crime. This fear may outweigh one's desire to perform a "civic duty" or obtain restitution. It is also true, unfortunately, that some citizens distrust the police and take it upon themselves to resolve disputes. The use of such silence, even for impeachment purposes, impinges on a defendant's constitutional rights while adding little probative benefit. For these reasons, I would affirm the Court of Appeals opinion.

LEVIN and ARCHER, JJ., concurred with CAVANAGH, J.

ARCHER, J. (*dissenting*). I concur with Justice CAVANAGH's dissenting opinion.

The majority concludes that evidence of a defendant's prearrest silence is admissible for purposes

---

[2] The word "natural" has been defined as what is "[c]onsonant with particular circumstances; expected and accepted." *The American Heritage Dictionary of the English Language* (New College ed).

of impeachment. I disagree. However, if such evidence is introduced into the record, the following safeguards must be followed by the trial court to avoid misuse of defendant's prearrest silence.

The trial court must weigh the probative value of admitting evidence of defendant's prearrest silence against any prejudicial effect. The prejudicial effect outweighs the probative value of admitting the evidence whenever the trial court determines that it would not have been natural for the defendant to come forward during the time period in which the prosecutor says the silence impairs the credibility of the trial testimony. This determination is to be made on a case-by-case basis.

The evidence of defendant's prearrest silence is not admissible to show defendant's guilt. If the evidence is admitted at all, pursuant to the majority's decision, it should only be admitted for impeachment purposes. The trial court should instruct the jury accordingly when the prosecutor is allowed to present the evidence to the jury.

LEVIN, J., concurred with ARCHER, J.