Cavanagh, J.
(concurring in part and dissenting in part). I concur in the result that defendant is entitled to a new trial.
As Justice MCCORMACK aptly notes, the United States Supreme Court’s 1926 decision in Raffel v United States, 271 US 494; 46 S Ct 566; 70 L Ed 1054 (1926), appears to present an anomaly in light of the due *287 process and fundamental fairness concerns subsequently articulated in Doyle v Ohio, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976). “Under the rationale of Doyle, due process is violated whenever the prosecution uses for impeachment purposes a defendant’s post-Miranda[1] silence.” Brecht v Abrahamson, 507 US 619, 629; 113 S Ct 1710; 123 L Ed 2d 353 (1993) (emphasis added).[2] This is because it is fundamentally unfair to assure a defendant that he has the right to remain silent and, thus, that his silence will not be used against him, only to later breach that promise by “using [the defendant’s] silence to impeach an explanation subsequently offered at trial.” Id. at 628 (citations and quotation marks omitted). On the basis of this rationale, I agree with Justice McCormack that to hold that the prosecution, under these facts, may impeach a defendant on the basis of his or her failure to testify at a previous trial presents an “analytical Gordian knot.”
*288 Aside from the constitutional issues raised in this case, I agree with Justice MCCORMACK that there are matters that weigh against a broad rule in favor of the admissibility of a defendant’s silence as an evidentiary matter.
As Justice McCormack notes, Raffel held that “the Fifth Amendment is not violated when a defendant is impeached on the basis of his prior silence.” Jenkins v Anderson, 447 US 231, 237 n 4; 100 S Ct 2124; 65 L Ed 2d 86 (1980). Yet, Raffel “did not focus on the question whether the cross-examination there involved was in fact probative in impeaching the defendant’s credibility.” Grunewald v United States, 353 US 391, 420; 77 S Ct 963; 1 L Ed 2d 931 (1957). Indeed, although the United States Supreme Court has indicated that states are “free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial,” Jenkins, 447 US at 240,[3] the United States Supreme Court has also reiterated that “in no case has [it] intimated that there is such a basic inconsistency between silence at one trial and taking the stand at a subsequent trial that the fact of prior silence can be used to impeach any testimony which a defendant elects to give at a later trial,” Stewart v United States, 366 US 1, 5; 81 S Ct 941; 6 L Ed 2d 84 (1961) (emphasis added).[4] Accordingly, the fact that *289 impeaching a defendant with his or her silence at a prior trial might be constitutional does not mean that, as an evidentiary matter, a defendant’s prior silence is automatically admissible in a later trial when a defendant elects to waive his constitutional and statutory rights in favor of testifying.[5] See People v Cetlinski (After Remand), 435 Mich 742, 773; 460 NW2d 534 (1990) (Levin, J., concurring in part and dissenting in part); Jenkins, 447 US at 240-241. Rather, “whether the challenged testimony [is] admissible under an evidentiary analysis, [is] a question that must be answered whenever the prosecutor seeks to elicit a defendant’s .. . silence.” Cetlinski, 435 Mich at 775 (Levin, J., concurring in part and dissenting in part) (emphasis added). See, also, Grunewald, 353 US at 418-419. In cases such as this, the issue thus includes whether a defendant’s invocation of a constitutional privilege involves such inconsistency with a defendant’s later trial testimony that impeachment by reference to a defendant’s prior silence is probative.
Notably, in other contexts, a majority of this Court has explained that impeachment with a defendant’s silence “should be approached with caution.” People v Collier, 426 Mich 23, 34; 393 NW2d 346 (1986) (citation and quotation marks omitted). I agree because, in my view, “whether or not the . . . Constitution is implicated, a defendant’s silence is not generally admissible”; a defendant’s silence may not be “routinely admitted” without “carefully examin[ing] the evidentiary admissibility of a defendant’s . . . silence . . ..” Cetlinski, 435 Mich at 788-789 (Levin, J., concurring in part and *290 dissenting in part). And “[a] defendant’s ‘silence’ does not necessarily mean anything,” generally rendering it of little probative significance and decreasing its potential for advancing the truth-seeking process. Id. at 776. See, also, People v Conyers, 52 NY2d 454, 458-459; 438 NYS2d 741; 420 NE2d 933 (1981). Accord United States v Zaccaria, 240 F3d 75, 79 (CA 1, 2001) (“[Science per se generally has little or no probative value for impeachment purposes.”).[6] See, also, MRE 401 and MRE 403.
Indeed, there might be possible explanations for a defendant’s failure to testify, even if entirely innocent of the charge against him, including “[ejxcessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and the offences charged against him,” or simply relying “upon the presumption of the law that [the defendant] was innocent of the charge, and leav[ing] the government to establish his guilt in the best way it could.” Wilson v United States, 149 US 60, 65-66; 13 S Ct 765; 37 L Ed 650 (1893).[7] Jurors, however, are “not necessarily sensitive to the . .. alternative explanations for a defendant’s [previous] silence” and thus may draw an “unwarranted inference of guilt” resulting in a substantial *291 risk of prejudice to a criminal defendant. Conyers, 52 NY2d at 459. See, also, Grunewald, 353 US at 424. As the United States Supreme Court has recognized, “[t]oo many, even those who should be better advised, view [the Fifth Amendment] privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege.” Id. at 421 (citation and quotation marks omitted). Accordingly, as Justice McCormack notes, in this context, one jurisdiction has explained that, although cross-examining a defendant with his or her prior silence “ ‘might not be unconstitutional, the constitutional context in which the privilege is initially asserted strips it of the evidentiary value it might otherwise be thought to have.’ ” Ante at 286, quoting Jones, 229 Pa Super at 245-246.[8] Given that the evidentiary matter in this case presents “grave constitutional overtones,” I generally find this rationale persuasive. Grunewald, 353 US at 423.
In sum, although Raffel and the Fifth Amendment of the United States Constitution may permit impeachment with a defendant’s prior silence in this context, a defendant’s silence must still be admissible under the Michigan Rules of Evidence, including MRE 403.
Viviano, J., took no part in the decision of this case.

 Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

 But, see, Brecht, 507 US at 628-629 (finding a Doyle violation on the basis of the state’s general references to the “petitioner’s failure to come forward with his version of events at any time before trial”); Jones v Indiana, 265 Ind 447, 451; 355 NE2d 402 (1976) (explaining that there is no difference between a defendant’s continued silence after an immediate postarrest custody and throughout the pretrial period because a “defendant who receives Miranda warnings is advised that he may remain silent; he is not warned that the right continues only while he is in the custody of the arresting officers” and “[p]enalizing the accused for silence before trial is no less punishment for the exercise of a right than penalizing silence at the time of arrest”), cited with approval by the majority opinion in People v Collier, 426 Mich 23, 36 n 3; 393 NW2d 346 (1986); Neely v State, 86 Wis 2d 304, 318; 272 NW2d 381 (Wis App, 1978) (stating that “the Doyle rationale equally applies to a comment on any pre-trial silence” because to say that the Constitution gives a defendant the right to remain silent, but then allow the prosecution to use the defendant’s exercise of that right against him or her, is just as fundamentally unfair as when that right is communicated in giving Miranda warnings), disapproved of in part on other grounds in Neely v State, 97 Wis 2d 38, 292 NW2d 859 (Wis, 1980).

 See, also, Fletcher v Weir, 455 US 603, 607; 102 S Ct 1309; 71 L Ed 2d 490 (1982) (“A state is entitled ... to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant’s own testimony.”)

 See, also, Stewart, 366 US at 6 n 13, 7 n 14 (rejecting the notion that a prior refusal to testify can be used to impeach a defendant’s general credibility and explaining that “[i]f the failure to testify at a previous trial were to amount to evidence that testimony at a subsequent trial was feigned or perjurious, the fact of failure to testify would always be admissible”); Grunewald, 353 US at 419-420 (explaining that Raffel *289 should not be read “as establishing as a matter of law that... a prior claim of privilege with reference to a question later answered at the trial is always to be deemed to be a prior inconsistent statement, irrespective of the circumstances under which the claim of privilege was made”).

 US Const, Am V; Const 1963, art 1, § 17; MCL 600.2159.

 Accordingly, to the extent that the majority opinion can be read to suggest that a defendant’s silence is per se highly probative, that a defendant’s silence at a previous trial is “plain evidence of guilt” that should not be suppressed, or that the use of a defendant’s silence as an impeachment tool should be applied with “special vigor,” I must part ways with the majority. Also, I simply note that Raffel “assumed that the defendant’s failure to testify at the first trial could not be used as evidence of guilt in the second trial[.]” Grunewald, 420 n 32 (emphasis added).

 See, also, Commonwealth v Jones, 229 Pa Super 236, 246-247; 327 A2d 638 (Pa Super, 1974) (explaining that there may be “reasons why a defendant might choose not to testify!,] such as fear of being confused or misunderstood or a general inability to articulate”); Doyle, 426 US at 617 (“[E]very post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.”).

 Cf Cetlinski, 435 Mich at 790 (Levin, J., concurring in part and dissenting in part) (addressing the evidentiary value of pre- and postarrest, pre-Miranda silence and stating that the use of a defendant’s silence for impeachment purposes “cannot he justified in the absence of unusual circumstances” because “evidence of a defendant’s .. . silence may have a disproportionate impact upon the minds of the jurors and... the potential for prejudice inherent in such evidence outweighs its marginal probative worth”), quoting Conyers, 52 NY2d at 459.