**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

PEOPLE v CLARY

Docket No. 144696. Argued January 9, 2013 (Calendar No. 8). Decided June 25, 2013.

Rayfield Clary was convicted by a jury in the Wayne Circuit Court, Daniel Patrick Ryan, J., of assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial was defendant's second. Defendant's first trial was declared a mistrial because of a hung jury. Defendant appealed his convictions. The Court of Appeals, MURRAY, P.J., and TALBOT and SERVITTO, JJ., reversed defendant's convictions in an unpublished opinion per curiam, issued February 16, 2012 (Docket No. 301906), concluding, among other things, that defendant had been improperly impeached with his silence when the prosecution made repeated references to his failure to testify at his first trial. The Supreme Court granted leave to appeal. 491 Mich 933 (2012).

In an opinion by Justice MARKMAN, joined by Chief Justice YOUNG and Justices KELLY and ZAHRA, the Supreme Court *held*:

Under the Fifth Amendment of the United States Constitution, no person may be compelled in any criminal case to be a witness against himself. The United States Supreme Court has held that the Fifth Amendment forbids using a defendant's failure to take the stand at trial as substantive evidence of guilt. However, the United States Supreme Court has also held, in *Raffel v United States*, 271 US 494 (1926), that the Fifth Amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence at a previous trial. In this case, defendant's silence at his previous trial was used for impeachment purposes. Thus, it was admissible under *Raffel*. In *Doyle v Ohio*, 426 US 610 (1976), the Supreme Court held that when a person under arrest is informed, as *Miranda* requires, that he may remain silent and that anything he says may be used against him, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence at the time of arrest to be used to impeach an explanation subsequently offered at trial. Accordingly, the prosecution's references at trial to defendant's postarrest, post-*Miranda* silence with the police were improper. Therefore, the disposition reached by the Court of Appeals, reversing defendant's convictions, was affirmed. If a third trial is held, under *Doyle* defendant's postarrest, post-*Miranda* silence with the police would be inadmissible, but if defendant were to testify at a third trial, under *Raffel* the prosecution could again refer to defendant's failure to testify at his first trial without violating his constitutional rights. A defendant in a criminal case does not have to testify. However, if he takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness.

Judgment of the Court of Appeals reversed to the extent that it held that defendant was improperly impeached with his silence at his first trial; decision of the Court of Appeals reversing defendant's convictions affirmed; Supreme Court's June 6, 2012, order granting leave to appeal in this case otherwise vacated; prosecution's application for leave to appeal denied; case remanded to the trial court for further proceedings.

Justice McCORMACK, concurring, joined all but part III(D) and footnote 9 of the majority opinion, writing separately to elaborate on the tension between *Raffel* and *Doyle*, and noting that the law remains unclear concerning the evidentiary value of a defendant's silence even if its admission is not barred by the United States Constitution. Although no United States Supreme Court opinion since *Raffel* has challenged its holding that the Fifth Amendment is not violated when a defendant is impeached on the basis of his silence at a previous trial, the significance of that fact is highly questionable in light of the due process rationale set forth in *Doyle*. State courts also remain free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial, and the majority correctly left it to the trial court to decide as an evidentiary matter whether testimony concerning defendant's silence at his first trial would be admissible at a third trial.

Justice CAVANAGH, concurring in part and dissenting in part, concurred in the result that defendant was entitled to a new trial. Justice CAVANAGH agreed with Justice McCORMACK that the decision in *Raffel* was anomalous in light of the due process and fundamental fairness concerns subsequently articulated in *Doyle* and he also agreed with her that aside from the constitutional issues raised in this case, that there were concerns weighing against a broad rule of admissibility of a defendant's silence as an evidentiary matter. Whether challenged testimony is admissible under the Michigan Rules of Evidence, including MRE 403, is a question that must be answered whenever the prosecution seeks to elicit evidence concerning a defendant's silence.

Justice VIVIANO took no part in the decision of this case.

©2013 State of Michigan

# Opinion

Chief Justice:        Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
                       Stephen J. Markman
                       Mary Beth Kelly
                       Brian K. Zahra
                       Bridget M. McCormack
                       David F. Viviano

FILED JUNE 25, 2013

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

No. 144696

RAYFIELD CLARY,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH (except VIVIANO, J.)

MARKMAN, J.

Defendant's first trial was declared a mistrial because of a hung jury. Following defendant's second jury trial, he was convicted of assault with intent to murder and possession of a firearm during the commission of a felony. On appeal, the Court of Appeals reversed defendant's convictions, concluding *inter alia* that defendant had been improperly impeached with his silence when the prosecutor made repeated references to his failure to testify at his first trial. We granted leave requesting that the parties address: (1) whether the prosecutor's impeachment of defendant's testimony using defendant's failure to testify at his earlier trial violated defendant's Fifth Amendment right against

self-incrimination and (2) whether prior consistent statements by the complainant were admissible under MRE 801(d)(1)(B). *People v Clary*, 491 Mich 933 (2012).

Because we believe that the prosecutor's impeachment of defendant's testimony with his failure to testify at his earlier trial was not improper, we reverse the judgment of the Court of Appeals to that extent. The Court of Appeals also addressed whether the prosecutor's references to defendant's post-arrest, post-*Miranda* silence were improper and held that reversal was not required because the record was unclear regarding whether the post-arrest silence also constituted post-*Miranda* silence. However, our review of the transcript of defendant's arraignment indicates that defendant was informed of his *Miranda* rights at his arraignment, and thus we hold that the prosecutor's references to defendant's post-arrest, post-*Miranda* silence at trial plainly violated *Doyle v Ohio*, 426 US 610, 618-619; 96 S Ct 2240; 49 L Ed 2d 91 (1976). Accordingly, we do not disturb the ultimate disposition reached by the Court of Appeals, i.e., the reversal of defendant's convictions. We otherwise vacate this Court's June 6, 2012 order granting leave to appeal and deny the prosecutor's application for leave to appeal because we are not persuaded that this Court should review the remaining question presented. Finally, we remand this case to the trial court for further proceedings consistent with this opinion. If defendant chooses to testify at a third trial, the prosecutor may again refer to defendant's failure to testify at his first trial without violating defendant's constitutional rights.

## I. FACTS AND HISTORY

At defendant's first trial, the complainant testified that defendant shot him. Defendant did not testify. The trial was eventually declared a mistrial because of a hung

jury. At defendant's second trial, the complainant again testified that defendant shot him, but this time defendant testified that he did not shoot the complainant. The prosecutor impeached defendant's testimony by asking him why he had not provided that testimony at the first trial.[1] The prosecutor also commented on defendant's silence at his first trial during closing arguments.[2] Following defendant's second jury trial, defendant was convicted of assault with intent to murder, MCL 750.83, and possession of a firearm during the commission of a felony, MCL 750.227b. The Court of Appeals reversed defendant's convictions, concluding, among other things, that defendant was improperly impeached with his silence when the prosecutor made several references to defendant's failure to testify at his first trial. *People v Clary*, unpublished opinion per curiam of the Court of Appeals, issued February 16, 2012 (Docket No. 301906). We granted the prosecutor's application for leave to appeal. *Clary*, 491 Mich 933.

## II. STANDARD OF REVIEW

Whether defendant was improperly impeached with his silence is a question of law that we review de novo. *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009).

---

[1] For instance, the prosecutor asked defendant, "You didn't tell that jury the same story you're telling this jury, did you, sir?" and "[I]f that was the truth and that was so important, why didn't you tell the last jury?"

[2] Specifically, the prosecutor said, "Well, ladies and gentleman, if it's the truth, if it's the truth and you're on trial, why wouldn't you tell the first jury?"

3

## III. ANALYSIS

### A. BACKGROUND

The Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself . . . ." US Const, Am V. See also Const 1963, art 1, § 17. The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Malloy v Hogan*, 378 US 1, 3; 84 S Ct 1489; 12 L Ed 2d 653 (1964). Pursuant to *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), in order to protect the privilege against compelled self-incrimination during custodial police interrogations, the suspect "must be warned that he has a right to remain silent [and] that any statement he does make may be used as evidence against him . . . ." The United States Supreme Court has held that "the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence [at trial] or instructions by the court that such silence is evidence of guilt." *Griffin v California*, 380 US 609, 615; 85 S Ct 1229; 14 L Ed 2d 106 (1965). That is, the Fifth Amendment prohibits using a defendant's failure to take the stand as substantive evidence of guilt. *Id*. The Court has also held that "'[w]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, [and] that anything he says may be used against him,'" "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence [at the time of his arrest] to be used to impeach an explanation subsequently offered at trial." *Doyle*, 426 US at 618-619 (citation omitted); see also

4

*Borgne*, 483 Mich at 186-188; *People v Shafier*, 483 Mich 205, 212-214; 768 NW2d 305 (2009).[3]

However, the United States Supreme Court has also held that "the use of prearrest silence to impeach a defendant's credibility violates [n]either the Fifth [n]or the Fourteenth Amendment to the Constitution." *Jenkins v Anderson*, 447 US 231, 232, 238, 240; 100 S Ct 2124; 65 L Ed 2d 86 (1980); see also *People v Cetlinski (After Remand)*, 435 Mich 742, 757; 460 NW2d 534 (1990) ("[N]either the Fifth Amendment nor the Michigan Constitution preclude[s] the use of prearrest silence for impeachment purposes."). Moreover, it has also held that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Fletcher v Weir*, 455 US 603, 607; 102 S Ct 1309; 71 L Ed 2d 490 (1982). Finally, it has held that "the Fifth Amendment is not violated when a defendant who testifies in his own defense is impeached with his prior silence" at his first trial. *Jenkins*, 447 US at 235, citing *Raffel v United States*, 271 US 494; 46 S Ct 566; 70 L Ed 1054 (1926).

---

[3] Cf. *United States v Robinson*, 485 US 25, 34; 108 S Ct 864; 99 L Ed 2d 23 (1988) ("It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence."); *People v Sutton (After Remand)*, 436 Mich 575, 580; 464 NW2d 276 (1990) ("[S]ilence is admissible to impeach a defendant's claim that he did not remain silent.").

## B. *RAFFEL* AND *STEWART*

In *Raffel*, 271 US at 496, 499, the United States Supreme Court held that it was not "error to require the defendant, Raffel, offering himself as a witness upon the second trial, to disclose that he had not testified as a witness in his own behalf upon the first trial."

> The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. He may be examined for the purpose of impeaching his credibility. His failure to deny or explain evidence of incriminating circumstances of which he may have knowledge, may be the basis of adverse inference, and the jury may be so instructed.[4] His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.
>
> If, therefore, the questions asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination, they were proper questions . . . . [*Id*. at 496-497 (citations omitted).]

---

[4] See *People v Prevost*, 219 Mich 233, 238; 189 NW 92 (1922) ("'The exemption from unfavorable comment is applicable only when the accused wholly refrains from testifying. If he voluntarily goes upon the stand, he waives this exemption, and the State may comment upon his testimony as fully as upon that of any other witness, and may call attention to his silence and demeanor while there, or at the preliminary examination, to his refusal to answer incriminating questions; or to deny prominent and damaging facts of which he must have some personal knowledge[.]'"), quoting Underhill, Criminal Evidence (2d ed), § 68; *People v McCrea*, 303 Mich 213, 285; 6 NW2d 489 (1942) ("'The privilege of the defendant against self-incrimination and its corollary, the prohibition against comment by counsel for the government upon his failure to testify, have been jealously protected by the courts. But, when the defendant elects, voluntarily, to testify, he waives his privilege, subjects himself to cross-examination and impeachment, and makes comment upon his testimony [or his refusal to testify] entirely proper.'") (citation omitted).

The Court then held that asking the defendant about his silence at his first trial was logically relevant and competent within the scope of the general rules of cross-examination:

> [W]e do not think the questions asked of him were irrelevant or incompetent. For if the cross-examination had revealed that the real reason for the defendant's failure to contradict the government's testimony on the first trial was a lack of faith in the truth or probability of his own story, his answers would have a bearing on his credibility and on the truth of his own testimony in chief.[5]
>
> It is elementary that a witness who upon direct examination denies making statements relevant to the issue, may be cross-examined with respect to conduct on his part inconsistent with this denial. The value of such testimony, as is always the case with cross-examination, must depend upon the nature of the answers elicited; and their weight is for the jury. But we cannot say that such questions are improper cross-examination, although the trial judge might appropriately instruct the jury that the failure of the defendant to take the stand in his own behalf is not in itself to be taken as an admission of the truth of the testimony which he did not deny. [*Id*. at 497-498.][6]

---

[5] While Justice CAVANAGH may be correct that *Raffel* "'did not *focus* on the question whether the cross-examination there involved was in fact *probative* in impeaching the defendant's credibility,'" *post* at 2 (emphasis added; citation omitted), *Raffel* also was not silent on the subject either. Instead, *Raffel*, 271 US at 497-498, expressly held that the defendant's prior silence was not "irrelevant" and may "have a bearing on his credibility and on the truth of his own testimony in chief." Contrary to Justice CAVANAGH's suggestion, we do not hold that "a defendant's silence is per se highly probative, that a defendant's silence at a previous trial is 'plain evidence of guilt' that should not be suppressed, or that the use of a defendant's silence as an impeachment tool should be applied with 'special vigor . . . .'" *Post* at 4 n 6. Instead, we simply hold that a defendant's prior silence might be, under certain circumstances, probative evidence with regard to a defendant's credibility, or lack thereof, and that when it is, assuming that its admission is otherwise permitted under the rules of evidence, it should not be excluded from the evidence presented to the jury.

[6] Justice CAVANAGH cites Justice LEVIN's concurrence/dissent in *Cetlinski*, 435 Mich at 788-789, for the proposition that "'a defendant's silence is *not* generally admissible.'" *Post* at 4 (emphasis in the original). However, this seems to be inconsistent with the

7

In summary, the Court held:

> The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, as does any other witness. We can discern nothing in the policy of the law against self-incrimination which would require the extension of immunity to any trial or to any tribunal other than that in which the defendant preserves it by refusing to testify. [*Id*. at 499.]

We are not persuaded by the Court of Appeals' attempt to distinguish *Raffel*. The Court of Appeals stated, "Unlike the defendant in *Raffel*, defendant in this case did not contradict the testimony of a witness offered at both his first and second trial." *Clary*, unpub op at 8. We respectfully disagree. In both *Raffel* and the instant case, the

---

*majority* opinion in *Cetlinski*, 435 Mich at 760 n 31, which held that "prior silence of a witness with regard to a fact to which he has testified, where such silence occurs under circumstances in which he would be expected to speak out, may be used to impeach during cross-examination," as well as with majority opinions from the United States Supreme Court. See, e.g., *Jenkins*, 447 US at 239 ("Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted."), citing 3A Wigmore, Evidence (Chadbourn rev), § 1042, p 1056; *Baxter v Palmigiano*, 425 US 308, 319; 96 S Ct 1551; 47 L Ed 2d 810 (1976) ("[T]he Court has consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause. Indeed, . . . [s]ilence is often evidence of the most persuasive character.") (citations and quotation marks omitted); *United States v Hale*, 422 US 171, 176; 95 S Ct 2133; 45 L Ed 2d 99 (1975) ("Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation."); *Grunewald v United States*, 353 US 391, 422-423; 77 S Ct 963; 1 L Ed 2d 931 (1957) ("Innocent men are more likely to [remain silent] in secret proceedings, where they testify without advice of counsel and without opportunity for cross-examination, than in open court proceedings, where cross-examination and judicially supervised procedure provide safeguards for the establishing of the whole, as against the possibility of merely partial, truth.").

defendant contradicted the testimony of a witness offered at both the first and second trials. In *Raffel*, the defendant contradicted the testimony of a government agent who testified that the defendant had made admissions of guilt, and in the instant case, defendant contradicted the testimony of the complainant who testified that defendant shot him.

We are equally unpersuaded by the Court of Appeals' conclusion that the instant case is more like *Stewart v United States*, 366 US 1; 81 S Ct 941; 6 L Ed 2d 84 (1961). Unlike in *Raffel* and the instant case, in *Stewart* the defendant did not contradict the testimony of a witness offered at both his first and second trials. As *Stewart*, 366 US at 5-6, explained:

> The *Raffel* case . . . involved a situation in which Raffel had sat silent at his first trial in the face of testimony by a government agent that Raffel had previously made admissions pointing to his guilt. On a second trial, Raffel took the stand and denied the truth of this same testimony offered by the same witness. Under these circumstances, this Court held that Raffel's silence at the first trial could be shown in order to discredit his testimony at the second trial on the theory that the silence itself constituted an admission as to the truth of the agent's testimony. The result was that Raffel's silence at the first trial was held properly admitted to impeach the specific testimony he offered at the second trial. Here, on the other hand, the defendant's entire "testimony" comprised nothing more than "gibberish without meaning" with the result that there was no specific testimony to impeach.

This "gibberish" was apparently offered to demonstrate that the defendant was insane, which was the defendant's chief defense at all three of his trials, and not to contradict the testimony of any witness. The United States Supreme Court held that because the defendant's silence was not used for impeachment purposes, it was not admissible under *Raffel*. In this case, however, defendant's silence was clearly used for impeachment

9

purposes and, thus, it is admissible under *Raffel*.[7]  We therefore hold that defendant was not improperly impeached with his silence when the prosecutor made repeated references to his failure to testify at his first trial.  Accordingly, if defendant chooses to testify at a third trial, the prosecutor may again refer to defendant's failure to testify at his first trial without violating defendant's constitutional rights.[8]

## C.  *DOYLE* AND *JENKINS*

However, the prosecutor may not again refer to defendant's post-arrest, post-*Miranda* silence with the police because to do so would clearly violate *Doyle*, 426 US at 618-619, which prohibits the admission of post-arrest, post-*Miranda* silence with the

---

[7] Moreover, "[t]he decision in *Stewart v. United States* was based on federal evidentiary grounds, not on the Fifth Amendment," *Jenkins*, 447 US at 237 n 4 (citation omitted), and thus it is not binding on this Court.  See *People v Finley*, 431 Mich 506, 514; 431 NW2d 19 (1988).

[8] Defendant alternatively argues that his silence at his first trial is barred as an evidentiary matter.  But see *Cetlinski*, 435 Mich at 760 n 31 ("[P]rior silence of a witness with regard to a fact to which he has testified, where such silence occurs under circumstances in which he would be expected to speak out, may be used to impeach during cross-examination.").  Because defendant did not previously raise this issue, the lower courts did not address it, and thus we will not address it either.  However, on remand, defendant is not precluded from raising this issue.  To this extent, we agree with Justice CAVANAGH that "the fact that impeaching a defendant with his or her silence at a prior trial might be constitutional does not mean that, as an evidentiary matter, a defendant's prior silence is *automatically admissible* in a later trial when a defendant elects to waive his constitutional and statutory rights in favor of testifying."  *Post* at 3 (emphasis altered).  That is, we agree with Justice CAVANAGH that the admission of a defendant's prior silence, as with any other piece of evidence, must comply with the rules of evidence, including MRE 401 (defining relevant evidence), MRE 402 (providing that relevant evidence is generally admissible), and MRE 403 (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice").

police. At defendant's second trial, the prosecutor impeached defendant by asking him why, after he was arrested and arraigned, he had not told the police that he did not shoot the complainant. The prosecutor also referred to this silence during her closing argument. The Court of Appeals held that there was no *Doyle* violation because "[a]fter reviewing the record, it is unclear whether the post-arrest silence referenced by the prosecutor was also post-*Miranda* silence." *Clary*, unpub op at 5. This Court subsequently granted defendant's motion to consider the transcript of defendant's arraignment, which shows that defendant had been informed of his *Miranda* rights at his arraignment. *Clary*, 821 NW2d 314 (Mich, 2012). Given this new information, it seems clear that the prosecutor's references to defendant's post-arrest, post-*Miranda* silence with the police violated *Doyle*. Accordingly, we hold that if there is a third trial, defendant's post-arrest, post-*Miranda* silence with the police is inadmissible.

Defendant argues that there is a tension between *Raffel* and *Doyle* because while *Doyle* holds that post-*Miranda* silence is inadmissible, *Raffel* holds that silence at an earlier trial is admissible to impeach a defendant who testifies at a subsequent trial, even though this silence is also post-*Miranda* silence. Although we recognize this tension, we also recognize that *Raffel* has not been overruled by *Doyle* or by any other United States Supreme Court decision. Indeed, *Doyle* expressly held that it was "unnecessary" to address in that case the constitutionality of a prosecutor's inquiry into silence after the time of arrest because that later silence "present[s] different considerations . . . ." *Doyle*, 426 US at 616 n 6. Specifically, *Doyle* explained:

> In addition, error of constitutional dimension is asserted because each petitioner was cross-examined as to post-arrest, preliminary hearing, and general pretrial silence when he testified as a defense witness at the

11

other petitioner's trial. These averments of error present different considerations from those implicated by cross-examining petitioners as defendants as to their silence after receiving *Miranda* warnings at the time of arrest.[9] In view of our disposition of this case we find it unnecessary to reach these additional issues. [*Id.* (emphasis omitted).]

Therefore, it appears that *Doyle*'s rule prohibiting the admission of post-*Miranda* silence applies to silence at the time of arrest, while *Raffel*'s rule permitting the admission of post-*Miranda* silence applies to silence at an earlier trial when the defendant takes the stand at a subsequent trial. This conclusion is further underscored by the fact that after *Doyle* was decided, the United States Supreme Court in *Jenkins* recognized the continued vitality of *Raffel*'s rule that a defendant's silence at his first trial can be used to impeach the defendant at a subsequent trial if the defendant decides to take the stand. *Jenkins*, 447 US at 235-238. Not only did *Jenkins* favorably discuss *Raffel* at length, but it also expressly rejected the suggestion "that the constitutional rule of *Raffel* was limited by later decisions of the Court," explaining that "no Court opinion decided since *Raffel* has challenged its holding that the Fifth Amendment is not violated when a defendant is impeached on the basis of his prior silence." *Id.* at 237 n 4.

### D. "CHILLING" FIFTH AMENDMENT RIGHTS

Defendant suggests that a person facing a trial will be less likely to rely on his right to remain silent if he knows that his reliance on that right can be subsequently used

---

[9] See Note, *The Admissibility of Prior Silence to Impeach the Testimony of Criminal Defendants*, 18 U Mich J L Reform 741, 752, 766 (1985) (Because "[t]he government inducement to remain silent, which may be caused by the shock of arrest, the fearful nature of custody, the *Miranda* warnings, or any combination thereof, will gradually lose its influence on the defendant as pressure is diminished and advice of counsel [is] obtained," "silence occurring long after the *Miranda* 'inducement' may be used for impeachment.").

against him, that is to say, exercise of the Fifth Amendment right against self-incrimination will be "chilled." However, as *Jenkins*, 447 US at 236-237, explained, "The *Raffel* Court explicitly rejected the contention that the possibility of impeachment by prior silence is an impermissible burden upon the exercise of Fifth Amendment rights." In other words, *Raffel* specifically considered the argument that "the adoption of the rule contended for by the Government might operate to bring pressure on the accused to take the stand on the first trial, for fear of the consequences of his silence in the event of a second trial; and might influence the defendant to continue his silence on the second trial because his first silence may there be made to count against him," and held that this argument was "without substance." *Raffel*, 271 US at 498-499.

> We need not close our eyes to the fact that every person accused of crime is under some pressure to testify, lest the jury, despite carefully framed instructions, draw an unfavorable inference from his silence.[10] When he does take the stand, he is under the same pressure: to testify fully, rather than avail himself of a partial immunity. And the accused at the second trial may well doubt whether the advantage lies with partial silence or with complete silence. Even if, on his first trial, he were to weigh the consequences of his failure to testify then, in the light of what might occur on a second trial, it would require delicate balances to enable him to say

---

[10] See *Williams v Florida*, 399 US 78, 83-84; 90 S Ct 1893; 26 L Ed 2d 446 (1970) ("The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."); *Barnes v United States*, 412 US 837, 847; 93 S Ct 2357; 37 L Ed 2d 380 (1973) ("Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination.").

that the rule of partial immunity would make his burden less onerous than the rule that he may remain silent, or at his option, testify fully, explaining his previous silence. We are unable to see that the rule that if he testifies, he must testify fully, adds in any substantial manner to the inescapable embarrassment which the accused must experience in determining whether he shall testify or not. [*Id.* at 499 (citations omitted).]

It is well established that "the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights.'" *Jenkins*, 447 US at 236, quoting *Chaffin v Stynchcombe*, 412 US 17, 30; 93 S Ct 1977; 36 L Ed 2d 714 (1973). More specifically, "[i]t is well settled that the government need not make the exercise of the Fifth Amendment privilege cost free." *McKune v Lile*, 536 US 24, 41; 122 S Ct 2017; 153 L Ed 2d 47 (2002) (opinion by Kennedy, J.). For example, in *Crampton v Ohio*, decided with *McGautha v California*, 402 US 183, 185, 211; 91 S Ct 1454; 28 L Ed 2d 711 (1971),[11] the Court held that Ohio's single-trial procedure, which allowed a defendant to "remain silent on the issue of guilt only at the cost of surrendering any chance to plead his case on the issue of punishment," was "constitutionally permissible." As the Court explained:

The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. . . .

. . . It does no violence to the privilege that a person's choice to testify in his own behalf may open the door to otherwise inadmissible evidence which is damaging to his case. . . .

\* \* \*

---

[11] The decision in *Crampton* was later vacated on other grounds. *Crampton v Ohio*, 408 US 941; 92 S Ct 2873; 33 L Ed 2d 765 (1972).

It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like.[12] Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify. [*Id.* at 213-215 (citations omitted).]

Similarly, in *Chaffin*, 412 US at 18, 29, the Court held that "in those States that entrust the sentencing responsibility to the jury, the Due Process Clause of the Fourteenth Amendment [does not] bar[] the jury from rendering higher sentences on retrials following reversals of prior convictions," even though the potential of "harsher sentences on retrial . . . [may] have a 'chilling effect' on the convicted defendant's exercise of his right to challenge his first conviction either by direct appeal or collateral attack." "The choice occasioned by the possibility of a harsher sentence, even in the case in which the choice may in fact be 'difficult,' does not place an impermissible burden on the right of a criminal defendant to appeal or attack collaterally his conviction." *Id.* at 35. See also *Brady v United States*, 397 US 742, 751; 90 S Ct 1463; 25 L Ed 2d 747 (1970) (declining "to hold . . . that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to

---

[12] Similarly, "a statement taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), may be used to impeach a defendant's credibility." *Jenkins*, 447 US at 237, citing *Harris v New York*, 401 US 222, 225; 91 S Ct 643; 28 L Ed 2d 1 (1971) ("Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.").

conviction and a higher penalty authorized by law for the crime charged"); *People v Wyngaard*, 462 Mich 659, 673-674; 614 NW2d 143 (2000) ("[T]he tactical decision that an inmate must make regarding whether to testify at a disciplinary hearing, when his testimony might potentially be used against him in a subsequent criminal proceeding, while perhaps quite difficult, does not constitute 'compulsion' under the Fifth Amendment.") (citation and quotation marks omitted). Likewise, the fact that a defendant deciding whether to take the stand might consider that, if he does not take the stand *and* a mistrial is declared *and* the prosecutor decides to retry him *and* he subsequently decides to take the stand at his second trial, the prosecutor might be able to use his silence at his first trial to impeach his testimony at the second trial, does not place an impermissible burden on the defendant's right to not take the stand in the first place. That is, it does not "compel" the defendant "to be a witness against himself," which is all the Fifth Amendment prohibits.

"In determining whether a constitutional right has been burdened impermissibly, it also is appropriate to consider the legitimacy of the challenged governmental practice." *Jenkins*, 447 US at 238. In this case, as in *Jenkins*, the challenged governmental practice is impeachment on cross-examination of a defendant, and as *Jenkins*, 447 US at 238, explained:

> Attempted impeachment on cross-examination of a defendant, the practice at issue here, may enhance the reliability of the criminal process. Use of such impeachment on cross-examination allows prosecutors to test the credibility of witnesses by asking them to explain prior inconsistent statements and acts. A defendant may decide not to take the witness stand because of the risk of cross-examination. But this is a choice of litigation tactics. Once a defendant decides to testify, "[the] interests of the other party and regard for the function of courts of justice to ascertain the truth

16

become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination."

Thus, impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truthfinding function of the criminal trial. [Citation omitted; alteration in the original.][13]

A defendant in a criminal case does not have to testify. However, "[i]f he takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness . . . ." *Brown v United States*, 356 US 148, 154; 78 S Ct 622; 2 L Ed 2d 589 (1958); see also *People v Collier*, 426 Mich 23, 38; 393 NW2d 346 (1986) ("When a defendant at trial elects to waive his privilege not to testify and takes the stand, attempted impeachment is a time-honored method of advancing the truthfinding function."). "Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all." *Brown*, 356 US at 155. However, "[h]e cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, [also] an immunity from cross-examination on

---

[13] See Department of Justice, Office of Legal Policy, *Report to the Attorney General on Adverse Inferences from Silence*, 22 U Mich J L Reform 1005, 1007 (1989) ("While the nature of the evidence available in criminal prosecutions varies widely from case to case, there is one constant among the potential sources of evidence—the defendant himself is almost invariably aware of whether he actually committed the offense with which he is charged. The criminal justice system's approach to that uniquely knowledgeable individual (the defendant) as a source of evidence has an important bearing on its effectiveness in the pursuit of truth and substantive justice."); Note, 18 U Mich J L Reform at 756 ("Use of prior silence to impeach a defendant's trial testimony aids in the truth-testing function. Because the defendant has a critical interest in the outcome of his trial, he may have a great incentive to perjure himself or distort the facts when he testifies. Therefore, truth-testing functions of impeachment and cross-examination should be applied with special vigor to assure the veracity of the defendant's testimony.").

17

the matters he has himself put in dispute." *Id.* at 155-156. Indeed, if the Fifth Amendment were interpreted to confer a "'right to set forth to the jury all the facts which tend in [the defendant's] favor without laying himself open to cross-examination upon those facts,'" "[i]t would make of the Fifth Amendment not only a human safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Id.* at 155-156 (citation omitted). Because "'[t]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility,'" *id.* at 156 (citation omitted), the Fifth Amendment has never been interpreted as conferring that right, and we refuse to do so here today.[14]

---

[14] As explained in the *Report to the Attorney General*, 22 U Mich J L Reform at 1119-1120:

> Any constraints on the discovery or use of evidence that the Constitution actually prescribes must, of course, be scrupulously observed. It is a very different matter, however, to create new "rights," based on misinterpretations of the Constitution, which limit legislative discretion in seeking to improve the processes of justice for the benefit of the whole public, and impede government in discharging its primary mission of ensuring the security of its people in their lives and liberty:

> "Truth here is the aim . . . . When the guilty go undetected, or, if detected, are nonetheless set free because plain evidence of guilt is suppressed, the price is exacted from what must be the first right of the individual, the right to be protected from criminal attack in his home, in his work, and in the streets. Government is constituted to provide law and order. The Bill of Rights must be understood in the light of that mission.

> "There is no right to escape detection. There is no right to commit a perfect crime or to an equal opportunity to that end. The Constitution is not at all offended when a guilty man stubs his toe. On the contrary, it is decent to hope that he will . . . . Thus the Fifth Amendment does not say that a man shall not be permitted to incriminate himself, or that he shall not

18

IV. CONCLUSION

For these reasons, we hold that defendant was not improperly impeached with his silence when the prosecutor made repeated references to defendant's failure to testify at his first trial. We therefore reverse the judgment of the Court of Appeals to the extent that it conflicts with this holding. We also hold that the prosecutor's references to defendant's post-arrest, post-*Miranda* silence at trial plainly violated *Doyle*. Accordingly, we do not disturb the ultimate disposition reached by the Court of Appeals, i.e., the reversal of defendant's convictions. We otherwise vacate this Court's June 6, 2012 order granting leave to appeal and deny the prosecutor's application for leave to appeal because we are not persuaded that this Court should review the remaining question presented. We also remand this case to the trial court for further proceedings consistent with this opinion. If defendant chooses to testify at a third trial, the prosecutor may again refer to his failure to testify at his first trial without violating defendant's constitutional rights.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

---

be persuaded to do so. It says no more than that a man shall not be 'compelled' to give evidence against himself."

In particular, the [F]ifth [A]mendment does not state or fairly imply that rules must be adopted to protect the defendant from the inferences which are normally drawn from silence in the face of incriminating circumstances. [Citation omitted.]

19

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                     No. 144696

RAYFIELD CLARY,

        Defendant-Appellee.

_____

MCCORMACK, J. (*concurring*).

I join all but part III(D) and footnote 9 of the majority opinion. I write separately for two reasons: first, to elaborate on the majority's discussion of the tension between the holdings in *Raffel v United States*[1] and *Doyle v Ohio*[2] and second, to note that the law remains unclear concerning the evidentiary value of a defendant's silence even if its admission is not barred by the United States Constitution. Accordingly, while there are significant points on which I agree with part III(D) of the majority opinion, I believe it is also important to highlight countervailing concerns regarding the use of silence.

As the majority opinion correctly observes, *Raffel* has not been overruled, and the United States Supreme Court has recognized its continued vitality. I further agree with the majority that the Court of Appeals' attempts to distinguish *Raffel* are not persuasive.

_____

[1] *Raffel v United States*, 271 US 494; 46 S Ct 566; 70 L Ed 1054 (1926).

[2] *Doyle v Ohio*, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976).

For these reasons, I agree that under controlling precedent the Constitution does not bar the admission of evidence concerning defendant's silence at his first trial.

I am doubtful, however, that much of *Raffel*'s reasoning remains sustainable in light of the subsequent *Doyle* decision. In particular, *Raffel*'s holding that any Fifth Amendment protection is waived when a defendant elects to testify at his or her second trial and the prosecution questions the defendant about his or her failure to testify at the first trial seems incompatible with *Doyle*'s reasoning. *Doyle* explained that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."[3] Thus, questioning a defendant about why he or she did not testify at an earlier trial casts the defendant's prior silence in a negative light when the defendant might have previously relied on a constitutional protection—something expressly forbidden by *Doyle*.[4] And as the majority observes, silence at trial is also post-*Miranda* silence. Moreover, the compulsion to speak at a first trial is similar to the compulsion to speak during a custodial interrogation by police. In both scenarios, the suspect/defendant is being accused of committing a crime and presented with the evidence supporting his or her guilt.

---

[3] *Id*. at 618.

[4] Poulin, *Evidentiary use of silence and the constitutional privilege against self-incrimination*, 52 Geo Wash L R 191, 215 (1984) ("Thorough analysis reveals that impeachment use of privileged silence impairs the policies underlying the fifth amendment privilege. Permitting impeachment by silence invades the accused's mental privacy protected by the fifth amendment because the government can use the silence as insight into the accused's mind, to discredit his sworn in-court testimony.").

2

Thus, while I recognize that "no Court opinion decided since *Raffel* has challenged its holding that the Fifth Amendment is not violated when a defendant is impeached on the basis of his prior silence,"[5] the *significance* of that statement is highly questionable in light of the due process rationale of *Doyle*.[6] Because *Jenkins* involved the question of whether it was permissible to comment on a defendant's prearrest silence, which might very well not involve reliance on a constitutional protection because the suspect might be unaware of his or her right to remain silent,[7] the Supreme Court in *Jenkins* was not forced to directly confront the tension between *Raffel* and *Doyle*.[8]

---

[5] *Jenkins v Anderson*, 447 US 231, 237 n 4; 100 S Ct 2124; 65 L Ed 2d 86 (1980).

[6] See, e.g., *id*. at 241 n 2 (Stevens, J., concurring) ("[T]here is a serious question about the continuing vitality of *Raffel*."); *id.* at 245 n 10 ("It strikes me as anomalous that, assuming *Raffel* has survived *Doyle*, a defendant who takes the stand is deemed to waive his Fifth Amendment objection to the use of his pretrial silence, but not to waive what I regard as a much less focused, and hence weaker, due process objection. Perhaps the Court's opinion can best be understood by assuming that *Raffel* is not good law on its facts under the *Doyle* rationale.") (citation omitted); see also *Raithel v State*, 40 Md App 107, 117; 388 A2d 161 (1978) ("The reasoning employed in *Johnson* [*v United States*, 318 US 189; 63 S Ct 549; 87 L Ed 704 (1943)], *Grunewald* [*v United States*, 353 US 391; 77 S Ct 963; 1 L Ed 2d 931 (1957)], and *Doyle* is fundamentally inconsistent with the notion contained in *Raffel* that an accused completely waives his privilege against self-incrimination by testifying and it makes no difference that an accused's prior silence might then be used as a weapon against him.").

[7] But see Brief for the American Civil Liberties Union as Amicus Curiae in *Salinas v Texas*, ___ US ___; 133 S Ct 928; 184 L Ed 2d 719 (2013) (granting cert), filed February 26, 2013, p 15 ("Now, in 2013, pre-arrest, pre-*Miranda* silence is just as likely to be attributed to pre-existing knowledge of *Miranda*'s rights as to any other reason . . . .").

[8] *Jenkins*, 447 US at 240 ("The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case.").

3

In this case, that tension is both present and particularly concerning because it is readily apparent from the record that defendant relied on his Fifth Amendment right in choosing to remain silent after receiving *Miranda* warnings.[9] Thus, the precise unfairness about which the *Doyle* Court was concerned—allowing impeachment using silence premised on the assertion of a constitutional right—is present in this case. While the majority correctly holds that "defendant's post-arrest, post-*Miranda* silence with the police is inadmissible," the competing rationales set forth in *Raffel* and *Doyle* are not easily reconcilable with regard to the period following a post-*Miranda* police interrogation.[10] Nor are they any more consistent when the silence occurred at a prior criminal proceeding. In other words, that a defendant waives his or her Fifth Amendment right when he or she chooses to take the stand, yet due process and fundamental fairness

---

[9] When the prosecution asked defendant why he didn't think it was important enough to tell the police the same story he told the jury at his second trial, defendant answered "I exercised my Fifth Amendment Right." Although defendant did not repeat this assertion in response to questioning about why he did not testify at his first trial, *Doyle* does not require that a defendant have *actually* relied on his Fifth Amendment right for due process to be violated; it is sufficient that he *may* have relied on that right. See *Doyle*, 426 US at 619 n 10.

[10] See *Brecht v Abrahamson*, 507 US 619, 628-629; 113 S Ct 1710; 123 L Ed 2d 353 (1993) ("[T]he State's references to petitioner's silence after [receiving *Miranda* warnings], *or more generally to petitioner's failure to come forward with his version of events at any time before trial* crossed the *Doyle* line.") (emphasis added; citation omitted); *Gov't of Virgin Islands v Davis*, 561 F3d 159, 164-165 (CA 3, 2009) (rejecting the government's argument that "*Doyle* only limits a prosecutor from referencing at trial a defendant's post-*Miranda* silence at the time of his arrest, and that *Raffel* thus permits impeachment at trial on the defendant's silence during any other time prior to trial" in part on the basis of "the obvious distinction that *Raffel* speaks only to the privilege against self-incrimination rather than due process").

4

prohibit impeachment of a testifying defendant with post-*Miranda* silence because the defendant relied on that right, presents an analytical Gordian knot.

Despite this unresolved conflict in the law, I concur with the majority opinion because *Raffel* is directly controlling here and has not been overruled, whereas *Doyle* has not been extended to this context. Thus, it must be the correct result unless or until the United States Supreme Court reconciles the adverse rationales underlying its holdings in *Raffel* and *Doyle*. I look forward to that case.

My second and related point involves the use of a defendant's silence as an evidentiary matter. While part III(D) of the majority opinion articulates the arguments for why the use of silence is not barred under the Fifth Amendment, I believe it is important to identify some factors militating against a broad rule in favor of admissibility as an evidentiary matter. To begin with, it is telling that in the same case in which the United States Supreme Court recognized the continued vitality of *Raffel*, it nevertheless noted that state courts "remain[] free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial."[11] This Court has done so on several occasions.[12] The United States Supreme Court and many commentators

---

[11] *Jenkins*, 447 US at 240.

[12] See, e.g., *People v Cetlinski (After Remand)*, 435 Mich 742, 760; 460 NW2d 534 (1990) (noting that the Court has "adopted the evidentiary rule that nonverbal conduct by a defendant, a failure to come forward, is relevant and probative for impeachment purposes when the court determines that it would have been 'natural' for the person to have come forward with the exculpatory information under the circumstances"), citing *People v Collier*, 426 Mich 23; 393 NW2d 346 (1986).

5

recognize that "every post-arrest silence is insolubly ambiguous . . . ."[13] As one court has observed:

> The right of an accused not to testify is absolute; he may not even be called as a witness unless he so chooses. To view his decision not to testify as being inconsistent with a later exculpatory statement would be to presume that the exercise of a right that is inextricably linked to the presumption of innocence constitutes conduct that can be viewed as inconsistent with innocence. Although such cross-examination might not be unconstitutional, the constitutional context in which the privilege is initially asserted strips it of the evidentiary value it might otherwise be thought to have.[14]

Thus, while part III(D) of the majority opinion thoroughly discusses the policy rationales for why the Fifth Amendment does not bar impeachment with prior silence when a defendant chooses to testify, it is important to note that equally compelling countervailing policies have led many courts to exclude such impeachment evidence given its potential to be highly prejudicial. The majority correctly leaves it for the trial court to decide in the first instance whether testimony concerning defendant's silence at the first trial is admissible as an evidentiary matter, including an inquiry into whether its admission would be substantially more prejudicial than probative under MRE 403.

With these observations, I do not join part III(D) or footnote 9, but otherwise concur with the Court's excellent opinion.

Bridget M. McCormack

---

[13] *Doyle*, 426 US at 617. See also *United States v Hale*, 422 US 171, 176; 95 S Ct 2133; 45 L Ed 2d 99 (1975) ("In most circumstances silence is so ambiguous that it is of little probative force."). See generally Thompson, *Methinks the lady doth protest too little: Reassessing the probative value of silence*, 47 U Louisville L R 21 (2008).

[14] *Commonwealth v Jones*, 229 Pa Super 236, 245-246; 327 A2d 638 (1974).

6

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v                                No. 144696

RAYFIELD CLARY,

        Defendant-Appellee.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I concur in the result that defendant is entitled to a new trial.

As Justice MCCORMACK aptly notes, the United States Supreme Court's 1926 decision in *Raffel v United States*, 271 US 494; 46 S Ct 566; 70 L Ed 1054 (1926), appears to present an anomaly in light of the due process and fundamental fairness concerns subsequently articulated in *Doyle v Ohio*, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976). "Under the rationale of *Doyle*, due process is violated *whenever* the prosecution uses for impeachment purposes a defendant's post-*Miranda*[1] silence." *Brecht v Abrahamson*, 507 US 619, 629; 113 S Ct 1710; 123 L Ed 2d 353 (1993) (emphasis added).[2] This is because it is fundamentally unfair to assure a defendant that

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] But, see, *Brecht*, 507 US at 628-629 (finding a *Doyle* violation on the basis of the state's general references to the "petitioner's failure to come forward with his version of events at any time before trial"); *Jones v Indiana*, 265 Ind 447, 451; 355 NE2d 402 (1976) (explaining that there is no difference between a defendant's continued silence after an immediate postarrest custody and throughout the pretrial period because a "defendant

he has the right to remain silent and, thus, that his silence will not be used against him, only to later breach that promise by "using [the defendant's] silence to impeach an explanation subsequently offered at trial." *Id*. at 628 (citations and quotation marks omitted). On the basis of this rationale, I agree with Justice MCCORMACK that to hold that the prosecution, under these facts, may impeach a defendant on the basis of his or her failure to testify at a previous trial presents an "analytical Gordian knot."

Aside from the constitutional issues raised in this case, I agree with Justice MCCORMACK that there are matters that weigh *against* a broad rule in favor of the admissibility of a defendant's silence as an evidentiary matter.

As Justice MCCORMACK notes, *Raffel* held that "the Fifth Amendment is not violated when a defendant is impeached on the basis of his prior silence." *Jenkins v Anderson*, 447 US 231, 237 n 4; 100 S Ct 2124; 65 L Ed 2d 86 (1980). Yet, *Raffel* "did not focus on the question whether the cross-examination there involved was in fact probative in impeaching the defendant's credibility." *Grunewald v United States*, 353 US 391, 420; 77 S Ct 963; 1 L Ed 2d 931 (1957). Indeed, although the United States

who receives *Miranda* warnings is advised that he may remain silent; he is not warned that the right continues only while he is in the custody of the arresting officers" and "[p]enalizing the accused for silence before trial is no less punishment for the exercise of a right than penalizing silence at the time of arrest"), cited with approval by the majority opinion in *People v Collier*, 426 Mich 23, 36 n 3; 393 NW2d 346 (1986); *Neely v State*, 86 Wis 2d 304, 318; 272 NW2d 381 (Wis App, 1978) (stating that "the *Doyle* rationale equally applies to a comment on any pre-trial silence" because to say that the Constitution gives a defendant the right to remain silent, but then allow the prosecution to use the defendant's exercise of that right against him or her, is just as fundamentally unfair as when that right is communicated in giving *Miranda* warnings), disapproved of in part on other grounds in *Neely v State*, 97 Wis 2d 38, 292 NW2d 859 (Wis, 1980).

Supreme Court has indicated that states are "free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial," *Jenkins*, 447 US at 240,[3] the United States Supreme Court has also reiterated that "*in no case* has [it] intimated that there is such a basic inconsistency between silence at one trial and taking the stand at a subsequent trial that the fact of prior silence can be used to impeach *any* testimony which a defendant elects to give at a later trial," *Stewart v United States*, 366 US 1, 5; 81 S Ct 941; 6 L Ed 2d 84 (1961) (emphasis added).[4] Accordingly, the fact that impeaching a defendant with his or her silence at a prior trial might be constitutional does *not* mean that, as an evidentiary matter, a defendant's prior silence is automatically admissible in a later trial when a defendant elects to waive his constitutional and statutory rights in favor of testifying.[5] See *People v Cetlinski (After Remand)*, 435 Mich 742, 773; 460 NW2d 534 (1990) (LEVIN, J., concurring in part and dissenting in part); *Jenkins*, 447 US at 240-241. Rather, "whether the challenged testimony [is] admissible under an

---

[3] See, also, *Fletcher v Weir*, 455 US 603, 607; 102 S Ct 1309; 71 L Ed 2d 490 (1982) ("A state is entitled . . . to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.")

[4] See, also, *Stewart*, 366 US at 6 n 13, 7 n 14 (rejecting the notion that a prior refusal to testify can be used to impeach a defendant's general credibility and explaining that "[i]f the failure to testify at a previous trial were to amount to evidence that testimony at a subsequent trial was feigned or perjurious, the fact of failure to testify would always be admissible"); *Grunewald*, 353 US at 419-420 (explaining that *Raffel* should not be read "as establishing as a matter of law that . . . a prior claim of privilege with reference to a question later answered at the trial is always to be deemed to be a prior inconsistent statement, irrespective of the circumstances under which the claim of privilege was made").

[5] US Const, Am V; Const 1963, art 1, § 17; MCL 600.2159.

3

evidentiary analysis, [is] a question that *must* be answered *whenever* the prosecutor seeks to elicit a defendant's . . . silence." *Cetlinski*, 435 Mich at 775 (LEVIN, J., concurring in part and dissenting in part) (emphasis added). See, also, *Grunewald*, 353 US at 418-419. In cases such as this, the issue thus includes whether a defendant's invocation of a constitutional privilege involves such inconsistency with a defendant's later trial testimony that impeachment by reference to a defendant's prior silence is probative.

Notably, in other contexts, a majority of this Court has explained that impeachment with a defendant's silence "should be approached with caution." *People v Collier*, 426 Mich 23, 34; 393 NW2d 346 (1986) (citation and quotation marks omitted). I agree because, in my view, "whether or not the . . . Constitution is implicated, a defendant's silence is *not* generally admissible"; a defendant's silence may not be "routinely admitted" without "carefully examin[ing] the evidentiary admissibility of a defendant's . . . silence . . . ." *Cetlinski*, 435 Mich at 788-789 (LEVIN, J., concurring in part and dissenting in part). And "[a] defendant's 'silence' does not necessarily mean anything," generally rendering it of little probative significance and decreasing its potential for advancing the truth-seeking process. *Id*. at 776. See, also, *People v Conyers*, 52 NY2d 454, 458-459; 438 NYS2d 741; 420 NE2d 933 (1981). Accord *United States v Zaccaria*, 240 F3d 75, 79 (CA 1, 2001) ("[S]ilence per se generally has little or no probative value for impeachment purposes.").[6] See, also, MRE 401 and MRE 403.

---

[6] Accordingly, to the extent that the majority opinion can be read to suggest that a defendant's silence is per se highly probative, that a defendant's silence at a previous trial is "plain evidence of guilt" that should not be suppressed, or that the use of a defendant's

4

Indeed, there might be possible explanations for a defendant's failure to testify, even if entirely innocent of the charge against him, including "[e]xcessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and the offences charged against him," or simply relying "upon the presumption of the law that [the defendant] was innocent of the charge, and leav[ing] the government to establish his guilt in the best way it could." *Wilson v United States*, 149 US 60, 65-66; 13 S Ct 765; 37 L Ed 650 (1893).[7] Jurors, however, are "not necessarily sensitive to the . . . alternative explanations for a defendant's [previous] silence" and thus may draw an "unwarranted inference of guilt" resulting in a substantial risk of prejudice to a criminal defendant. *Conyers*, 52 NY2d at 459. See, also, *Grunewald*, 353 US at 424. As the United States Supreme Court has recognized, "[t]oo many, even those who should be better advised, view [the Fifth Amendment] privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Id.* at 421 (citation and quotation marks omitted). Accordingly, as Justice MCCORMACK notes, in this context, one jurisdiction has explained that, although cross-examining a defendant with his or her prior silence

---

silence as an impeachment tool should be applied with "special vigor," I must part ways with the majority. Also, I simply note that *Raffel* "assumed that the defendant's failure to testify at the first trial could *not* be used as evidence of guilt in the second trial[.]" *Grunewald*, 420 n 32 (emphasis added).

[7] See, also, *Commonwealth v Jones*, 229 Pa Super 236, 246-247; 327 A2d 638 (Pa Super, 1974) (explaining that there may be "reasons why a defendant might choose not to testify[,] such as fear of being confused or misunderstood or a general inability to articulate"); *Doyle*, 426 US at 617 ("[E]very post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.").

5

"'might not be unconstitutional, the constitutional context in which the privilege is initially asserted strips it of the evidentiary value it might otherwise be thought to have.'" *Ante* at 6, quoting *Jones*, 229 Pa Super at 245-246.[8] Given that the evidentiary matter in this case presents "grave constitutional overtones," I generally find this rationale persuasive. *Grunewald*, 353 US at 423.

In sum, although *Raffel* and the Fifth Amendment of the United States Constitution may permit impeachment with a defendant's prior silence in this context, a defendant's silence must still be admissible under the Michigan Rules of Evidence, including MRE 403.

Michael F. Cavanagh

VIVIANO, J., took no part in the decision of this case.

---

[8] Cf *Cetlinski*, 435 Mich at 790 (LEVIN, J., concurring in part and dissenting in part) (addressing the evidentiary value of pre- and postarrest, pre-*Miranda* silence and stating that the use of a defendant's silence for impeachment purposes "cannot be justified in the absence of unusual circumstances" because "evidence of a defendant's . . . silence may have a disproportionate impact upon the minds of the jurors and . . . the potential for prejudice inherent in such evidence outweighs its marginal probative worth"), quoting *Conyers*, 52 NY2d at 459.